STATE OF CONNECTICUT *v.* WARREN PATTERSON
(10752)
(10855)

LAVERY, LANDAU and FREEDMAN, Js.

Argued December 7, 1992—decision released April 22, 1993

*David M. Cohen,* with whom was *Gregory J. Williams,* for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief, were *Eugene Callahan,* state's attorney, *Carol Dreznick,* assistant state's attorney, and *David Russman* and *Mark Migliaccio,* law student interns, for the appellee (state).

LANDAU, J. The defendant appeals from his conviction, after a trial to the jury, of possession of marijuana with intent to sell in violation of General Statutes § 21a-277 (b).[1] The defendant was also charged with

---

[1] General Statutes § 21a-277 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with intent to sell or dispense, possesses with intent to sell or dispense, offers, gives or administers to another person any controlled substance, except a narcotic substance, or a hallucinogenic substance other than marijuana, except as authorized in this chapter, may, for the first offense, be fined not more than twenty-five thousand dollars or be imprisoned not more than seven years or be both fined and imprisoned; and, for each subsequent offense, may be fined not more than one hundred thousand dollars or be imprisoned not more than fifteen years, or be both fined and imprisoned."

possession of marijuana in violation of General Statutes § 21a-279 (c),[2] and was acquitted of that charge. On appeal, the defendant claims that the trial court improperly (1) concluded that the state had not discriminatorily employed a peremptory challenge to exclude a black venireperson from the jury, (2) failed to set aside legally inconsistent verdicts, (3) failed to suppress the fruits of a search of the defendant's vehicle, (4) failed to suppress an inculpatory statement the defendant made to the police, (5) sentenced the defendant immediately following the verdict without first ordering a presentence investigation pursuant to Practice Book § 910, and (6) failed to follow certain procedural rules in revoking the defendant's outstanding probation. We hold that the trial judge's absence from the courtroom during voir dire in a criminal trial constitutes reversible error. We nonetheless address several of the defendant's remaining claims for the reasons stated herein.

I

The defendant first claims that the trial court improperly concluded that the state did not discriminatorily employ a peremptory challenge to exclude a black venireperson from the jury. We do not reach the merits of the defendant's claim, however, because we find that it is not possible to review the *Batson*[3] claim when

---

[2] General Statutes § 21a-279 (c) provides: "Any person who possesses or has under his control any quantity of any controlled substance other than a narcotic substance, or a hallucinogenic substance other than marijuana or who possesses or has under his control less than four ounces of a cannabis-type substance, except as authorized in this chapter, for a first offense, may be fined not more than one thousand dollars or be imprisoned not more than one year, or be both fined and imprisoned; and for a subsequent offense, may be fined not more than three thousand dollars or be imprisoned not more than five years, or be both fined and imprisoned."

[3] *Batson* v. *Kentucky,* 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

the trial court was not in the position to make the necessary findings underlying the claim.[4]

Our courts have long held that the presence of the judge is required at all times during a criminal trial. In *State* v. *Smith,* 49 Conn. 376, 383–84 (1881), our Supreme Court stated that "[w]e all agree, and desire to have it distinctly understood, that it is the duty of the presiding judge at criminal trials, and especially where life is involved, to be visibly present every moment of their actual progress, so that he can both see and hear all that is being done. This is a right secured to the accused by the law of the land, of which he cannot be deprived. All the formalities of the trial should be scrupulously observed, so that the people present may see and know that everything is properly and rightly done."[5]

In *Capital Traction Co.* v. *Hof,* 174 U.S. 1, 13–14, 19 S. Ct. 580, 43 L. Ed. 873 (1898), the United States Supreme Court stated that "[t]rial by jury, in the primary and usual sense of the term at the common law and in the American Constitution, is not merely a trial by a jury of twelve men before an officer vested with authority to cause them to be summoned and empaneled, to administer oaths to them and to the constable in charge, and to enter judgment and issue exe-

---

[4] In this case, the trial judge was not present during voir dire. After the venire was assembled the trial judge stated: "I'm going to leave the voir dire up to you people, and I'll be in my chambers if I'm needed."

[5] In *State* v. *Smith,* 49 Conn. 376, 383 (1881), the court did not grant the defendant's motion for a new trial because it "must dispose of this question upon the facts disclosed by the motion. If they do not show that the prisoner is entitled to a new trial we have no power to grant it." The motion stated that the judge had withdrawn to an anteroom for a few minutes but was within hearing of the proceedings at all times. The court determined that for all that appeared to the contrary, the trial judge, even if in this anteroom, "occupied a position so near the door as to enable him to *see and hear* as well as if he had remained inside the court-room." (Emphasis added.) Id.

cution on their verdict; but it is a trial by a jury of twelve men, *in the presence and under the superintendence of a judge* empowered to instruct them on the law and to advise them on the facts, and (except on acquittal of a criminal charge) to set aside their verdict if in his opinion it is against the law or the evidence. This proposition has been so generally admitted, and so seldom contested, that there has been little occasion for its distinct assertion." (Emphasis added.)

The presence of the judge in a criminal trial is a "constitutional imperative." *Peri* v. *State,* 426 So. 2d 1021 (Fla. App. 1983). The presence of the judge is at the "very core of [the] constitutional guarantee" of the right of an accused to a trial by an impartial jury in accordance with the sixth amendment to the United States constitution. Id., 1023.

Courts throughout our country have uniformly criticized a trial judge's absence during criminal trial proceedings. See *State* v. *James,* 110 Ariz. 334, 336–37, 519 P.2d 33 (1974) (it was error for the judge to absent himself from the courtroom when the verdict was returned); *People* v. *Garcia,* 826 P.2d 1259, 1265–66 (Colo. 1992) (judge must be present in the courtroom while evidence is being introduced); *Brown* v. *State,* 538 So. 2d 833, 834–35 (Fla. 1989) (presence of judge is essential to constitutional guarantee of trial by impartial jury); *Peri* v. *State,* supra; *People* v. *Bolton,* 324 Ill. 322, 330, 155 N.E. 310 (1927) (judge should have remained on bench during jury selection); *People* v. *Chrfrikas,* 295 Ill. 222, 228, 129 N.E. 73 (1920) (serious error for judge to leave the courtroom during the course of the trial); *People* v. *Morehouse,* 328 Mich. 689, 692, 44 N.W.2d 830 (1950) (absence of trial judge from courtroom at any stage of proceedings is utterly inexcusable and deserving of censure); *State* v. *Eberhardt,* 32 Ohio Misc. 39, 41, 282 N.E.2d 62 (1972) (judge has duty to be present in courtroom from opening until clos-

ing of the trial); *State* v. *O'Connor,* 378 N.W.2d 248, 258–59 (S.D. 1985) (Henderson, J., dissenting) (absence of trial judge to receive verdict should have rendered conviction null and void); *Bright* v. *State,* 306 S.W.2d 899, 900–901 (Tex. App. 1957); *Pennell* v. *State,* 299 S.W.2d 699, 700 (Tex. App. 1957) (error for judge to absent himself from courtroom during voir dire).[6]

The proposition that a judicial proceeding without judicial authority is void "traces back to the English Year Books, see *Bowser* v. *Collins,* Y. B. Mich. 22 Edw. IV, f. 30, pl. 11, 145 Eng. Rep. 97 (Ex. Ch. 1482), and was made settled law by Lord Coke in *Case of the Mar-*

---

[6] A few federal courts have also addressed this issue. In *Stirone* v. *United States,* 341 F.2d 253 (3d Cir.), cert. denied, 381 U.S. 902, 85 S. Ct. 1446, 14 L. Ed. 2d 284 (1965), the court held that the judge's brief absence was not reversible absent a showing of prejudice. The court also went on to hold "hereafter in criminal cases, irrespective of suggestion of waiver by the parties, trial judges will not leave the bench during any part of the voir dire or other jury selection process without recessing the court." Id., 256 n.3; see also *Haith* v. *United States,* 342 F.2d 158, 159 (3d Cir. 1965) (absence of the trial judge not reversible without showing of prejudice). In *Taylor* v. *United States,* 386 F. Sup. 132, 144–45 (1974), the court held that the *Stirone* court was not laying down a "per se rule requiring reversal whenever violation is proven, but rather a prophylactic procedure the violation of which would warrant the relief of a new trial only upon a showing of prejudice to the defendant." This interpretation is pre-*Batson.* See discussion in text, infra.

There is also some controversy regarding federal magistrates, in the place of article III district judges, conducting voir dire in felony cases, under the Federal Magistrates Act, 28 U.S.C. §§ 631 through 639 (1988). See *Gomez* v. *United States,* 490 U.S. 858, 109 S. Ct. 2237, 104 L. Ed. 2d 923 (1989), and *Peretz* v. *United States,*        U.S.      , 111 S. Ct. 2661, 115 L. Ed. 2d 808 (1991); see also K. Huffman, "*Peretz* v. *United States:* Magistrates Perform Felony Voir Dire," 70 N.C.L. Rev. 1334 (1992). In *Peretz,* the majority concluded that the defendant's constitutional right to an article III judge at jury selection was a personal right subject to waiver. *Peretz* v. *United States,* supra, 2669. Although the court concluded that aspects of structural rights were present, these rights were not implicated sufficiently to threaten the structural protections built into article III. Id.

Nowhere in these recent decisions does the Supreme Court give credence to voir dire conducted outside the presence of judicial authority, whether life tenured article III judges, or magistrates.

*shalsea,* 10 Coke Rep. 68b, 77a, 77 Eng. Rep. 1027, 1041 (K.B. 1612)." *Burnham* v. *Superior Court,* 495 U.S. 604, 608, 110 S. Ct. 2105, 109 L. Ed. 2d 631 (1990). This proposition is embodied in the phrase coram non judice—"before a person not a judge—meaning, in effect, that the proceeding in question was not a judicial proceeding because lawful judicial authority was not present, and could therefore not yield a judgment." Id., 609. Connecticut courts have recognized this and invalidated judgments that violated this common law principle since the early nineteenth century. See *Grumon* v. *Raymond,* 1 Conn. 39 (1814). When voir dire in a criminal trial is conducted in the judge's absence, it is without the cloak of judicial authority, and any judgment flowing from those extra-judicial proceedings is null and void.

The trial judge's absence has ramifications for not only the accused but the reviewing court as well.[7] The Oregon Supreme Court exposited the problem that an appellate court faces when reviewing proceedings from which a trial judge was absent when it said "[h]erein is the vice of the matter. . . . When the trial judge is absent there is in reality no person or officer who can certify to this court as to what took place during that absence. This court is, and must always remain, in doubt as to the matter; no satisfactory conclusion can be reached from the affidavits of opposing counsel; and thus this period remains a hiatus in the case. The presiding judge of a trial court is charged with the duty of trying the case from the opening to the close, and he ought not to abdicate his functions even for half an hour. During such an absence grave errors or abuses of privilege may occur, and this court may be left to the conflicting affidavits of overzealous attorneys or parties in interest to determine what in fact took place.

---

[7] The trial judge's absence has constitutional ramifications for the venirepersons as well. See infra.

This court is not organized nor authorized to try such questions, and we do not propose to do so. It avails not to say that error must be affirmatively shown. This is true, but, where the trial court has disabled itself from informing us as to what occurred, how is error to be shown save by affidavit? We cannot but regard this long absence from the bench during an important part of the trial as an error which calls for a new trial. *Smith* v. *Sherwood,* [95 Wis. 558, 560, 70 N.W. 682 (1897)]." (Internal quotation marks omitted.) *Frangos* v. *Edmunds,* 179 Or. 577, 599, 173 P.2d 596 (1946).

The rule requiring the judge's presence at every stage of the criminal proceedings applies with equal force to the selection of the jury.[8] Both the federal and state constitutions guarantee to an accused the right to a public trial by an impartial jury. U.S. Const., amends. VI and XIV; Conn. Const., article first, § 8; *State* v. *Esposito,* 223 Conn. 299, 308, 613 A.2d 242 (1992). "[P]art of the guaranty of a defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors." *Morgan* v. *Illinois,* U.S. , 112 S. Ct. 2222, 2230, 119 L. Ed. 2d 492 (1992). The right to a voir dire examination of each prospective juror in a criminal action was established as a constitutional right in 1972 by inclusion in article IV[9] of the amendments to the state constitution the provision that "[t]he right to question each juror individually by counsel shall be inviolate." *State* v. *Haskins,* 188 Conn. 432,

---

[8] See *State* v. *Cole,* 8 Conn. App. 545, 551-52, 513 A.2d 752 (1986) (trial commences with the voir dire).

[9] Article IV of the amendments to the Connecticut constitution provides that "[t]he right of trial by jury shall remain inviolate, the number of such jurors, which shall not be less than six, to be established by law; but no person shall, for a capital offense, be tried by a jury of less than twelve jurors without his consent. In all civil and criminal actions tried by a jury, the parties shall have the right to challenge jurors peremptorily, the number of such challenges to be established by law. The right to question each juror individually by counsel shall be inviolate."

446, 450 A.2d 828 (1982); *State* v. *Rogers,* 197 Conn. 314, 317–18, 497 A.2d 387 (1985); *State* v. *Hill,* 196 Conn. 667, 671, 495 A.2d 699 (1985); *State* v. *Burns,* 173 Conn. 317, 321, 377 A.2d 1082 (1977); *State* v. *Anthony,* 172 Conn. 172, 174, 374 A.2d 156 (1976). The control of the voir dire in a criminal action falls squarely on the shoulders of the trial judge. The trial judge, in accord with General Statutes § 54-82f[10] and our state constitution, has the duty to analyze individual questioning and limit examination to questions relating to (1) juror's qualifications, (2) interest, if any, in the subject matter of the action, and (3) relations with the parties thereto. *State* v. *Dahlgren,* 200 Conn. 586, 600–601, 512 A.2d 906 (1986). It is the judge's duty to impanel an impartial jury; *Rosales-Lopez* v. *United States,* 451 U.S. 182, 188, 101 S. Ct. 1629, 68 L. Ed. 2d 22 (1981); to oversee the use of peremptory challenges by counsel; id.; to ensure that the jury impaneled is competent; *State* v. *Castonguay,* 218 Conn. 486, 510–11, 590 A.2d 901 (1992); *State* v. *Cubano,* 203 Conn. 81, 88–89, 523 A.2d 495 (1987); to determine the scope of the voir dire examination; *State* v. *Smith,* 222 Conn. 1, 6, 608 A.2d 63, cert. denied, U.S. , 113 S. Ct. 383, 121 L. Ed. 2d 293 (1992); *State* v. *Hernandez,* 204 Conn. 377, 381, 528 A.2d 794 (1987); *State* v. *Dolphin,* 203 Conn. 506, 511–12, 525 A.2d 509 (1987); to determine the

[10] General Statutes § 54-82f provides: "In any criminal action tried before a jury, either party shall have the right to examine, personally or by his counsel, each juror outside the presence of other prospective jurors as to his qualifications to sit as a juror in the action, or as to his interest, if any, in the subject matter of the action, or as to his relations with the parties thereto. If the judge before whom the examination is held is of the opinion from the examination that any juror would be unable to render a fair and impartial verdict, the juror shall be excused by the judge from any further service upon the panel, or in the action, as the judge determines. The right of such examination shall not be abridged by requiring questions to be put to any juror in writing and submitted in advance of the commencement of said action."

See also Practice Book § 848, which provides the same right.

materiality and relevance of the questions put to the venire; id.; and to oversee and determine challenges for cause; *Morgan* v. *St. Francis Hospital & Medical Center,* 216 Conn. 621, 624–25, 583 A.2d 630 (1990). " '[I]t is important that the trial courts, in the exercise of their discretion, be punctilious in restricting counsel's inquiries to questions which are pertinent and proper for testing the capacity and competency of the juror . . . and which are neither designed nor likely to plant prejudicial matter in his mind.' " *Bleau* v. *Ward,* 221 Conn. 331, 340, 603 A.2d 1147 (1992), quoting *Duffy* v. *Carroll,* 137 Conn. 51, 57, 75 A.2d 33 (1950). A court cannot fulfill this constitutional mandate in absentia.

The rationale of voir dire also mandates that the trial judge be present in the courtroom at all times during voir dire in a criminal action. "The purpose of the voir dire examination is twofold. First, it provides information upon which the *presiding judge* may decide which of the prospective jurors, if any, he should excuse for cause. Secondly, it informs counsel as to matters which may influence them in the exercise of their right to peremptory challenges. *Duffy* v. *Carroll,* [supra, 56]. *State* v. *Anthony,* supra, 174–75; see *State* v. *Haskins,* [supra, 446]." (Emphasis added; internal quotation marks omitted.) *State* v. *Dahlgren,* supra, 600. "Voir dire examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." *Mu'Min* v. *Virginia,* 500 U.S. 415, 431, 111 S. Ct. 1899, 114 L. Ed. 2d 493 (1991). "If the voir dire process is to truly serve its purpose of obtaining a fair and impartial jury, then the operating components of that process—the court, the attorneys, and the prospective jurors—must function with certain expectations and within certain limitations. The voir dire process in its ideal form is a collaborative effort between the court, the prospective jurors, and the attorney for the party then conducting voir dire. The bur-

den on the court is to rule on challenges for cause, to recognize appropriate peremptory challenges, to regulate the attorneys' questioning within the court's sound discretion . . . ." Note, "Juror Bias Undiscovered During Voir Dire: Legal Standards for Reviewing Claims of a Denial of the Constitutional Right to an Impartial Jury," 39 Drake L. Rev. 201, 202 (1991). Failure by the court to fulfill its obligations during voir dire can result in the denial of the defendant's right to a fair trial. Id.; see *Gomez* v. *United States*, 490 U.S. 858, 874–75, 109 S. Ct. 2237, 104 L. Ed. 2d 923 (1989) (errors occurring during voir dire may be grounds for reversal of conviction). "Voir dire plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored. Without an adequate voir dire the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled. See *Connors* v. *United States*, 158 U.S. 408, 413, [15 S. Ct. 951, 39 L. Ed. 1033] (1895). Similarly, lack of adequate voir dire impairs the defendant's right to exercise peremptory challenges where provided by statute or rule . . . . Despite its importance, the adequacy of voir dire is not easily subject to appellate review. The trial judge's function at this point in the trial is not unlike that of the jurors later on in the trial. Both must reach conclusions as to impartiality and credibility by relying on their own evaluations of demeanor evidence and of responses to questions. . . . In neither instance can an appellate court easily second-guess the conclusions of the decisionmakers who heard and observed the witnesses." *Rosales-Lopez* v. *United States*, supra. "Far from an administrative impanelment process, voir dire represents jurors' first introduction to the substantive factual and legal issues in a case. To detect prejudices, the examiner . . . must elicit from prospective jurors

candid answers about intimate details of their lives. The court further must scrutinize not only spoken words but also gestures and attitudes of all participants to ensure the jury's impartiality. See, e.g., *Wainwright* v. *Witt,* 469 U.S. 412, 428 n.9, 105 S. Ct. 844, 83 L. Ed. 2d 841 (1985), quoting *Reynolds* v. *United States,* 98 U.S. 145, 156–57, 25 L. Ed. 244 (1879). But only words can be preserved for review; no transcript can recapture the atmosphere of the voir dire, which may persist throughout the trial." *Gomez* v. *United States,* supra, 874–75.

The nature of peremptory challenges in light of *Batson* v. *Kentucky,* 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), further mandates that the trial judge be present during voir dire. *Batson* v. *Kentucky,* supra, "established the guidelines for evaluating a criminal defendant's claim that the state's exercise of a peremptory challenge was based on purposeful racial discrimination." *State* v. *Holloway,* 209 Conn. 636, 640, 553 A.2d 166, cert. denied, 490 U.S. 1071, 129 S. Ct. 2078, 104 L. Ed. 2d 643 (1989); see *State* v. *Gonzalez,* 206 Conn. 391, 394–95, 538 A.2d 210 (1988). A defendant who alleges that he has been the victim of purposeful racial discrimination in the use of a peremptory challenge carries the ultimate burden of persuasion. *Batson* v. *Kentucky,* supra, 94 n.18. "Once the defendant has established a prima facie case of purposeful racial discrimination,[11] the burden shifts to the state to

[11] To make a prima facie showing of discrimination under *Batson,* "the defendant first must show that he is a member of a cognizable racial group . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate. . . . Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the venire-

advance a neutral explanation for the venireperson's removal. Id., 97. The defendant is then afforded the opportunity to demonstrate that the state's articulated reasons are insufficient or pretextual." *State* v. *Holloway,* supra, 641.

In *Holloway,* our Supreme Court departed from *Batson* to the extent that it held that an accused does not have to first make out a prima facie case to be entitled to an explanation from the state. The court in *Holloway* stated that rather than deciding, based on the existence of a prima facie case, whether an accused is entitled to an explanation of the prosecutor's use of peremptory challenges,[12] "the better course to follow would be to hold a *Batson* hearing on the defendant's request whenever the defendant is a member of a cognizable racial group and the prosecutor exercises peremptory challenges to remove members of the defendant's race[13] from the venire. . . ." (Internal quotation marks omitted.) Id., 646 n.4, quoting *State* v. *Jones,* 293 S.C. 54, 57–58, 358 S.E.2d 701 (1987).

The ultimate decision as to whether the defendant has successfully demonstrated that the prosecution has

---

men from the petit jury on account of their race." (Citations omitted; internal quotation marks omitted.) *Batson* v. *Kentucky,* 476 U.S. 79, 96, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

[12] But see *State* v. *Gonzalez,* 206 Conn. 391, 400, 538 A.2d 210 (1988) (striking of even one juror on basis of race violates equal protection clause).

[13] The *Batson* holding has been expanded to encompass the exclusion of any person from the jury on the basis of race. See *Powers* v. *Ohio,* 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991). Other decisions from lower federal courts and state courts are expanding the *Batson* holding to encompass exclusion from the jury on the basis of gender. See *United States* v. *DeGross,* 960 F.2d 1433 (9th Cir. 1992); *Dias* v. *Sky Chiefs, Inc.,* 948 F.2d 532 (9th Cir. 1991); *United States* v. *Nichols,* 937 F.2d 1257 (7th Cir. 1991), cert. denied,    U.S.   , 112 S. Ct. 989, 117 L. Ed. 2d 151 (1992); *United States* v. *Hamilton,* 850 F.2d 1038 (4th Cir. 1988); *People* v. *Wheeler,* 22 Cal. 3d 258, 583 P.2d 748, 148 Cal. Rptr. 890 (1978); see also, note, "Beyond *Batson:* Eliminating Gender-Based Peremptory Challenges," 105 Harv. L. Rev. 1920 (1992).

used their peremptory challenges in a racially discriminatory manner rests with the trial court. *Batson* v. *Kentucky,* supra, 96–97. In deciding whether the defendant has made the requisite showing, or if the prosecution's explanation is neutral or merely pretextual, the trial court should consider all relevant factors and circumstances. Id. A neutral explanation "means an explanation based on something other than the race of the juror. At this step in the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez* v. *New York,* 500 U.S.    , 111 S. Ct. 1859, 1866, 114 L. Ed. 2d 395 (1991). If the prosecutor's reason, however, is "without regard to the particular circumstances of the trial or the individual responses of the jurors, [it] may be found by the judge to be a pretext for racial discrimination." Id., 1873; see also *State* v. *Jones,* 29 Conn. App. 304, 331–32, 615 A.2d 149 (1992). The factors that might be used to determine pretext have been discussed by our appellate courts. See *State* v. *Smith,* supra, 222 Conn. 6; *State* v. *Gonzalez,* supra; *State* v. *Jones,* supra, 29 Conn. App. 329 (*Norcott, J.,* dissenting). "These include whether the prosecutor's reasons are related to the case or are based on a group bias inapplicable to the prospective juror; whether the prosecutor questioned the juror, did so only perfunctorily, or asked questions not asked of other jurors so as to elicit a particular response; whether jurors of different races but similar characteristics were treated differently; and whether a disproportionate number of peremptory challenges were used to strike from the venire members of one particular race." *State* v. *Jones,* supra, 29 Conn. App. 332; *State* v. *Gonzalez,* supra, 399. In *Hernandez* v. *New York,* supra, the United States Supreme Court stated that "invidious discriminatory purpose may often be

inferred from the totality of the relevant facts. . . ." As Justice Norcott noted in his dissent in *State* v. *Jones,* supra, 29 Conn. App. 334, "the most basic element in any determination of whether there was purposeful discrimination is the voir dire proceedings themselves." See also *Gomez* v. *United States,* supra, 874–75. The most critical relevant fact the trial court would be unable to discern if absent from the courtroom is the race of the venireperson whose exclusion is being challenged or the race of the venirepersons with whom his questioning is being compared.[14] Without outside indication, such as representations of counsel, race cannot be gleaned from transcripts or tape recordings. Representations of counsel carry no evidentiary weight. See *L. & L. Builders, Inc.* v. *Parmelee,* 221 Conn. 203, 206, 602 A.2d 1016 (1992); *State* v. *Tillman,* 220 Conn. 487, 496, 600 A.2d 738 (1991); see also *Frangos* v. *Edmunds,* 179 Or. 577, 173 P.2d 596 (1946). A trial judge cannot make a determination of the totality of the relevant facts so as to conclude that there was purposeful racial discrimination in the use of a peremptory challenge if he or she is not present during the voir dire proceedings.

Because the trial judge was not present during voir dire, and because a trial judge cannot make the required

[14] The trial court's ability to make such a comparison was outlined in *State* v. *Holloway,* 209 Conn. 636, 639–40 n.3, 553 A.2d 166 (1989). The trial court's response to the defendant's *Batson* challenge was as follows: "I'm gathering here, Mr. McIntosh, all you're really saying to me is that the responses of Mr. Gaddy were such that they seemed to be fairly decent responses. It relates to the venireman and because of that, the only reason that the State would have rejected him was because he was black. I really can't . . . draw that conclusion. Especially when I look to the veniremen that were questioned earlier such as Mr. Rawley and Miss Grundman—as far as the Court's impression of their responses, I thought their responses were quite decent. Of course, they were white and they were rejected. So I can't automatically assume that because Mr. Gaddy's responses were relatively, for lack of a better word, decent as we would expect a venireman to respond that I have to determine that the peremptory challenge was because of race only. . . ." Id.

determination of whether the defendant has demonstrated that the prosecutor has used a peremptory challenge in a racially discriminatory manner unless he or she is present, the failure to be present precludes review of a *Batson* claim by the trial court and, of course, this reviewing court. See *Gomez* v. *United States,* supra, 874–75; *Frangos* v. *Edmunds,* supra, 606. The question that remains is what effect the judge's absence during voir dire has on this case.

Most jurisdictions, while criticizing the judge's absence from the courtroom at any time during the proceedings, have employed either a harmless error analysis or a prejudice to the defendant analysis in determining the effect the judge's absence had on those proceedings. See *State* v. *James,* supra (absence not reversible error unless it is shown to have prejudiced defendant); *People* v. *Berkowitz,* 369 Ill. 197, 15 N.E.2d 699 (1938) (harmless when no jury could have acquitted defendant); *People* v. *Bolton,* supra (error harmless); *People* v. *Morehouse,* supra (absence not reversible error unless it is shown to have prejudiced defendant); *Sand* v. *State,* 467 So. 2d 907 (Miss. 1985) (not reversible error absent objection by defendant and prejudice); *State* v. *Eberhardt,* supra (not reversible without showing of prejudice); *Grant* v. *State,* 385 P.2d 925 (Okla. Crim. App. 1963) (not reversible error when judge was within hearing distance and there was no prejudice); *Bright* v. *State,* supra, 901 (not reversible without showing of prejudice). Other jurisdictions have held that a defendant can waive his right to have the judge present at any point in the trial. See *People* v. *Garcia,* supra; *Brown* v. *State,* 538 So. 2d 833 (Fla. 1989); *Kemp* v. *State,* 541 So. 2d 1332 (Fla. App. 1989); *State* v. *Peri,* supra. We do not, however, conclude, post-*Batson,* that the judge's absence from voir dire in a criminal proceeding can be either waived or subject to harmless error or prejudicial review.

"A waiver of a constitutional right is 'an intelligent relinquishment or abandonment of a known right.' " *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); *State* v. *Sierra,* 213 Conn. 422, 439, 568 A.2d 448 (1990). A waiver can only be effective if one knows one has a specific right and voluntarily and intelligently relinquishes it. *Delgado* v. *Martinez,* 25 Conn. App. 155, 158, 593 A.2d 518 (1991). "A waiver of a fundamental right is not to be presumed from a silent record." *State* v. *Shockley,* 188 Conn. 697, 707, 453 A.2d 441 (1982). It is undoubtedly true that a defendant can waive a number of constitutional rights that he possesses. Among these are his right to remain silent; *Miranda* v. *Arizona,* 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); *State* v. *Roseboro,* 221 Conn. 430, 442, 604 A.2d 1286 (1992); his right to be present during his trial; *State* v. *Simino,* 200 Conn. 113, 125–26, 509 A.2d 1039 (1986); and, upon entering a guilty plea, his right to trial by jury, confrontation, and self-incrimination. *State* v. *Brown,* 18 Conn. App. 716, 720, 559 A.2d 1179 (1989). Because, however, the defendant is not the only party with substantial constitutional rights entitled to protection during voir dire, the defendant alone cannot waive the judge's absence from the courtroom during voir dire in a criminal trial.

There are two primary interests being protected during voir dire. The first is the interest of the accused, and the other is that of the members of the venire. The rights of the accused were previously detailed in our discussion of *Batson* v. *Kentucky,* supra. We next examine the rights of the members of the venire.

In *Powers* v. *Ohio,* 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991), the United States Supreme Court expanded the right of an accused to challenge the exclusion of a venireperson on the basis of racial discrimi-

nation regardless of the race of the venireperson.[15] In *Powers,* the petitioner, a white male, was indicted on two counts of murder and one count of attempted murder. During voir dire, Powers objected to the use of a peremptory challenge by the prosecutor to remove a black venireperson. Powers requested the court to compel the prosecutor to explain on the record his reasons for excluding a black person. The court refused. The prosecutor used nine peremptory challenges, six of which were used to remove black venirepersons from the jury. On certiorari, the Supreme Court concluded that the exclusion of any juror on the basis of race violated the Equal Protection Clause of the constitution and that the petitioner had standing to "raise the equal protection rights of a juror excluded from service" on the jury. In doing so, the court recognized the right that each person has to participate in the democratic process through their inclusion on a jury.

"The opportunity for ordinary citizens to participate in the administration of justice has long been recognized as one of the principal justifications for retaining the jury system." *Powers* v. *Ohio,* supra, 406. In *Balzac* v. *Porto Rico,* 258 U.S. 298, 310, 42 S. Ct. 343, 66 L. Ed. 627 (1922), the court held that "[t]he jury system postulates a conscious duty of participation in the machinery of justice. . . . One of its greatest benefits is in the security it gives the people that they, as jurors actual or possible, being part of the judicial system of the country can prevent its arbitrary use or abuse." (Citations omitted; internal quotation marks omitted.)

Participation as a member of a jury is one of the most significant opportunities to participate in the democratic process. *Powers* v. *Ohio,* supra. While states can

---

[15] This decision went beyond the court's holding in *Batson* thereby eliminating the requirement that the excluded venireperson and the accused be of the same race.

prescribe qualifications for their jurors, "a member of the community may not be excluded from jury service on account of his or her race. . . . Whether jury service be deemed a right, a privilege, or a duty, the State may no more extend it to some of its citizens and deny it to others on racial grounds than it may invidiously discriminate in the offering and withholding of the elective franchise." (Citations omitted; internal quotation marks omitted.) Id. The court held that while "[a]n individual juror does not have a right to sit on any particular petit jury . . . he or she does possess the right not to be excluded from one on account of race." Id., 1369.

Jurors excluded on the basis of their race have the legal right to bring suit on their own behalf. Id. Challenges to exclusion by the excluded juror, however, are extremely rare. "The barriers to a suit by an excluded juror are daunting. Potential jurors are not parties to the jury selection process and have no opportunity to be heard at the time of their exclusion. Nor can excluded jurors easily obtain declaratory or injunctive relief when discrimination occurs through an individual prosecutor's exercise of peremptory challenges. . . . [I]t would be difficult for an individual juror to show a likelihood that discrimination against him at the voir dire stage will recur. . . . And, there exist considerable practical barriers to suit by the excluded juror because of the small financial stake involved and the economic burdens of litigation. . . . The reality is that a juror dismissed because of race probably will leave the courtroom possessing little incentive to set in motion the arduous process needed to vindicate his own rights." (Citations omitted; internal quotation marks omitted.) Id., 1373.

Thus, because of these barriers, the court held that the accused has the standing to challenge a juror's exclusion on the juror's behalf. The court did not, how-

ever, give to the accused, nor do we, the right to waive the constitutional right not to be excluded on the basis of race on behalf of the venireperson, which is, in effect, what would happen if the defendant consented to the judge's absence and a *Batson* or *Powers* challenge arose. Indeed, it is questionable whether the average excluded venireperson even realizes that they possess a constitutional right not to be excluded on the basis of their race, and a person cannot knowingly waive a constitutional right before they know that they possess it. See *Johnson* v. *Zerbst,* supra; and *State* v. *Sierra,* supra. Therefore, even if we were to conclude that a defendant could waive *his* right to have a judge present during voir dire in a criminal trial, he could not waive the juror's right to have the judge present. We must next determine whether the judge's absence from the courtroom during voir dire in a criminal trial can be harmless error.

The harmless error rule has long been a part of our nation's jurisprudence. This rule, developed in response to the perception that numerous convictions were being overturned on extremely technical grounds, permits appellate tribunals to look beyond the presence of these technical errors to determine if the error affected the outcome of the case. See C. Ogletree, *"Arizona* v. *Fulminante:* The Harm of Applying Harmless Error to Coerced Confessions,"* 105 Harv. L. Rev. 152, 156–57 (1991). The rationale for this rule was stated in *Chapman* v. *California,* 386 U.S. 18, 21–22, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967): "All of these rules, state or federal, serve a very useful purpose insofar as they block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial." Initially, the harmless error rule was applied only to nonconstitutional errors, and all constitutional errors were subject to automatic reversal. C. Ogletree, supra, 157. In recent years, how-

ever, this rule has been applied to constitutional errors. In *Chapman* v. *California,* supra, the court held that "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." Since *Chapman,* both the United States Supreme Court and our Supreme Court have applied the harmless error rule to certain constitutional errors. As our Supreme Court has stated, however, "[i]f error touches a less basic right, we sometimes apply the 'harmless error' exception, but only sparingly, in a few, discrete circumstances." *State* v. *Cohane,* 193 Conn. 474, 485, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984); *State* v. *Zeko,* 177 Conn. 545, 558, 418 A.2d 917 (1979); see, e.g., *Clemons* v. *Mississippi,* 494 U.S. 738, 110 S. Ct. 1441, 108 L. Ed. 2d 725 (1990) (unconstitutionally overbroad jury instructions at the sentencing stage of a capital case); *Carella* v. *California,* 491 U.S. 263, 109 S. Ct. 2419, 105 L. Ed. 2d 218 (1989) (jury instruction containing an erroneous conclusive presumption); *Satterwhite* v. *Texas,* 486 U.S. 249, 108 S. Ct. 1792, 100 L. Ed. 2d 284 (1988) (admission of evidence at the sentencing stage of a capital case in violation of the sixth amendment counsel clause); *Pope* v. *Illinois,* 481 U.S. 497, 107 S. Ct. 1918, 95 L. Ed. 2d 439 (1987) (jury instruction misstating element of the offense); *Rose* v. *Clark,* 478 U.S. 570, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986) (jury instruction containing erroneous rebuttable presumption); *Crane* v. *Kentucky,* 476 U.S. 683, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986) (erroneous exclusion of defendant's testimony regarding the circumstances of his confession); *Delaware* v. *Van Arsdall,* 475 U.S. 673, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986) (restriction on a defendant's right to cross-examine a witness for bias in violation

of the sixth amendment confrontation clause); *Rushen* v. *Spain,* 464 U.S. 114, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983) (denial of a defendant's right to be present at trial); *United States* v. *Hasting,* 461 U.S. 499, 103 S. Ct. 1974, 76 L. Ed. 2d 96 (1983) (improper comment on defendant's silence at trial, in violation of fifth amendment self-incrimination clause); *Hopper* v. *Evans,* 456 U.S. 605, 102 S. Ct. 2049, 72 L. Ed. 2d 367 (1982) (statute improperly forbidding trial court's giving a jury instruction on a lesser included offense in a capital case in violation of the due process clause); *Kentucky* v. *Whorton,* 441 U.S. 786, 99 S. Ct. 2088, 60 L. Ed. 2d 640 (1979) (failure to instruct the jury on the presumption of innocence); *Moore* v. *Illinois,* 434 U.S. 220, 98 S. Ct. 458, 54 L. Ed. 2d 424 (1977) (admission of identification evidence in violation of the sixth amendment counsel clause); *Brown* v. *United States,* 411 U.S. 223, 93 S. Ct. 1565, 36 L. Ed. 2d 208 (1973) (admission of out-of-court statement of a nontestifying codefendant in violation of the sixth amendment counsel clause); *Milton* v. *Wainwright,* 407 U.S. 371, 92 S. Ct. 2174, 33 L. Ed. 2d 1 (1972) (confession obtained in violation of *Massiah* v. *United States,* 377 U.S. 201, 84 S. Ct. 1199, 12 L. Ed. 2d 246 [1964]); *Chambers* v. *Maroney,* 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970) (admission of evidence obtained in violation of the fourth amendment); *Coleman* v. *Alabama,* 399 U.S. 1, 90 S. Ct. 1999, 26 L. Ed. 2d 387 (1970) (denial of counsel at a preliminary hearing in violation of the sixth amendment counsel clause); *State* v. *Cerilli,* 222 Conn. 556, 610 A.2d 1130 (1992) (failure to give requested identification instruction); *State* v. *Hull,* 210 Conn. 481, 556 A.2d 154 (1989) (improper admission of testimony concerning defendant's post-*Miranda* requests for attorney); *State* v. *Castonguay,* 194 Conn. 416, 481 A.2d 56 (1984) (improper juror discussion of case prior to deliberation); *State* v. *Johnson,* 21 Conn. App. 291, 573 A.2d

1218 (1990) (denial of defendant's request to cross-examine victim under sixth amendment confrontation clause); *State* v. *Coleman,* 14 Conn. App. 657, 544 A.2d 194, cert. denied, 208 Conn. 815, 546 A.2d 283 (1988) (improper instruction regarding circumstantial evidence); *State* v. *Nieves,* 13 Conn. App. 60, 534 A.2d 1231 (1987), cert. denied, 207 Conn. 802, 540 A.2d 74 (1988) (refusal to allow cross-examination of codefendant after codefendant testified concerning events of crime involving both codefendants); *State* v. *Perez,* 10 Conn. App. 279, 523 A.2d 508, cert. denied, 203 Conn. 810, 525 A.2d 524 (1987) (instruction regarding state's burden of proof).

Both the United States Supreme Court and our appellate courts, however, have held that some constitutional rights are so basic and so fundamental that their breach can never be deemed harmless. In *Chapman* v. *California,* supra, the court enumerated three constitutional violations; *Gideon* v. *Wainwright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963) (right to counsel); *Payne* v. *Arkansas,* 356 U.S. 560, 78 S. Ct. 844, 2 L. Ed. 2d 975 (1958) (coerced confessions); *Tumey* v. *Ohio,* 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927) (impartial judge); that "can never"[16] be treated as harmless error. See also *State* v. *Mebane,* 204 Conn. 585, 529 A.2d 680 (1987), cert. denied, 484 U.S. 1046, 108 S. Ct. 784, 98 L. Ed. 2d 870 (1988) (complete denial of assistance of counsel); *State* v. *Gordon,* 185 Conn. 402, 441 A.2d 119 (1981), cert. denied, 455 U.S. 989, 102 S. Ct. 1612, 71 L. Ed. 2d 248 (1982) (unnecessarily suggestive and unreliable identifications that impair the truth finding function of jury); *State* v. *Payne,* 12 Conn. App. 408, 530 A.2d 1110 (1987) (failure to instruct on elements of the crime charged). Other cases have

---

[16] Never say never again. In *Arizona* v. *Fulminante,* 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991), the court extended the harmless error standard to include coerced confessions.

expanded the constitutional errors that are not subject to the harmless error rule. See, e.g., *Vasquez* v. *Hillery,* 474 U.S. 254, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986) (unlawful exclusion of members of a defendant's race from a grand jury); *Waller* v. *Georgia,* 467 U.S. 39, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984) (the right to a public trial); *McKaskle* v. *Wiggins,* 465 U.S. 168, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984) (the right to self-representation at trial).

These "constitutional deprivations" were described by Chief Justice Rehnquist as "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards. The entire conduct of the trial from beginning to end is obviously affected" by the deprivation of these rights. *Arizona* v. *Fulminante,* 499 U.S. 279, 309–10, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). The *Fulminante* court held that in the presence of structural defects such as these, the trial "cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." Id.; *Rose* v. *Clark,* 478 U.S. 570, 577–78, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986). The error in this case prohibits the court from serving its function as a vehicle for determination of guilt or innocence and the entire conduct of the trial is affected. Indeed, like *Vasquez* v. *Hillery,* supra, where the court held that the unlawful exclusion of members of the defendant's race from the grand jury could not be subject to harmless error analysis, the failure of the judge to be present during voir dire in a criminal case could lead, in this era of *Batson* and *Powers* and their progeny, to the exclusion of members of the venire from the jury on the basis of race. Therefore, the failure of the judge to be present during voir dire in a criminal trial unduly burdens the defendant's right to a trial by an impartial jury and, as such, is not amenable to harmless error analysis.

Nor do we hold that the failure of the judge to be present during voir dire in a criminal case can be subject to a rule requiring the defendant to show that he was prejudiced by the judge's absence. "A prejudice rule would . . . unnecessarily embroil trial counsel, trial judges and appellate courts in a search for evanescent harm, real or fancied." (Internal quotation marks omitted.) *Peri* v. *State,* supra, 1027, quoting *Ivory* v. *State,* 351 So. 2d 26, 28 (Fla. 1977). The better remedy, a rule requiring automatic reversal every time the judge is absent from voir dire in a criminal case, will eliminate the need for our appellate courts to visit such arguments as where the trial judge was, whether he or she was within hearing distance, and whether anything happened in his or her absence that injured the defendant. See *Frangos* v. *Edmunds,* supra; *O'Connor* v. *Bonney,* 57 S.D. 134, 231 N.W. 521 (1930) (neither reviewing court nor trial court ought to be left to resolve conflicting affidavits of interested and partisan attorneys); *Peri* v. *State,* supra ("It makes no difference [that] the judge was in another part of the same building. It is no less error than if he had been in another country." Quoting *Meredith* v. *People,* 84 Ill. 479, 482 [1877]). Furthermore, automatic reversal will deter judges from being absent from any part of a trial in progress. Such a rule "will effectively remove any incentive to disregard the requirement of his or her presence and compel respect for the constitutional guarantee of a fair and impartial trial." *Peri* v. *State,* supra, 1027. It is best to adhere to a bright-line rule that the accused, as well as members of the venire, will have the presence of the trial judge to ensure the protection of their constitutional rights. "[T]he practice of permitting a judge's absence during the questioning and selection of a jury should no longer continue. . . . [I]t is more important than ever for the trial judge to be present during all parts of voir dire to assure

that selection of jurors is free from racial prejudice." (Citations omitted.) *State* v. *Singletary,* 549 So. 2d 996, 999 (Fla. 1989).

We are of course very sensitive to the impact that such a decision will have on judges throughout our state. We are well aware of the practice of a judge, in an effort to conserve judicial time and resources, indirectly supervising jury selection in several courtrooms at the same time. We also know that the judges use this time to write memorandums of decision, to write jury charges and to fulfill their myriad responsibilities. These practices are no doubt symptomatic of the pressures on the judiciary to control and move the overcrowded docket as quickly and effectively as possible. "Caseflow management places new demands on our already overworked judges because the judge must actively establish and enforce the pace of litigation coming before the court . . . . Because both courtrooms and judges are necessarily limited in number, burgeoning caseloads require that efficient use be made of the available space and judicial time."[17] *In re Mongillo,* 190 Conn. 686, 691, 461 A.2d 1387 (1983). The solution to this problem, however, "does not lie any more in trials without juries, without counsel, or without rules of evidence—all of which, rather obviously, would speed things along." *Peri* v. *State,* supra. Our primary concern is, and always will be, to ensure that the constitutional rights of all parties to the judicial process are protected. These rights must always remain paramount to concerns of judicial economy. Therefore, we hold that the trial judge's absence from the courtroom during voir dire in a criminal trial is per se reversible error.

[17] "Increases in the number of judges, as well as appointments to the additional positions created, are not within the province of the judiciary. Conn. Const., art. V § 2; amend. XX § 2." *Pellegrino* v. *O'Neill,* 193 Conn. 670, 678, 480 A.2d 476, cert. denied, 469 U.S. 875, 105 S. Ct. 236, 83 L. Ed. 2d 176 (1984).

## II

Although our ruling on the trial judge's absence is dispositive of the appeal, we must comment briefly on the defendant's second claim, that the verdicts of not guilty on the possession of marijuana charge and guilty on the possession of marijuana with intent to sell charge are legally and logically inconsistent and must therefore be overturned. See *State* v. *Rodriguez,* 7 Conn. App. 470, 476, 509 A.2d 72 (1986).

Possession of marijuana is a lesser included offense of the crime of possession of marijuana with intent to sell. *State* v. *Williams,* 12 Conn. App. 225, 231, 530 A.2d 627 (1987). A defendant cannot commit the greater offense of possession with intent to sell without having also committed the lesser offense of simple possession. Id. Consistency in the verdicts, however, is not required. *State* v. *Rosado,* 178 Conn. 704, 708–709, 425 A.2d 108 (1979).

On several occasions, our courts have refused to reverse a verdict of guilty on one count where that verdict appeared to be inconsistent with a verdict of acquittal on another count. See *State* v. *Jackson,* 194 Conn. 241, 243–44, 478 A.2d 1018 (1984) (inconsistent verdicts on robbery charges arising out of same incident upheld); *State* v. *Martin,* 189 Conn. 1, 6–7, 454 A.2d 256, cert. denied, 461 U.S. 933, 103 S. Ct. 2098, 77 L. Ed. 2d 306 (1983) (trial court erred in relying on inconsistency in setting aside conviction on injury charge where defendant acquitted on related assault charge); *State* v. *Morgan,* 179 Conn. 617, 620 and n.2, 427 A.2d 429 (1980) (acquittal on assault did not require acquittal on less serious endangerment charge); *State* v. *Rosado,* supra (inconsistent verdicts on possession and sale of narcotics upheld). The law permits inconsistent verdicts because of the recognition that jury delibera-

tions necessarily involve negotiation and compromise. *Steadman* v. *United States,* 358 A.2d 329, 332 (D.C. App. 1976). "[I]nconsistency of the verdicts is immaterial." *State* v. *Manning,* 162 Conn. 112, 122, 291 A.2d 750 (1971). Our Supreme Court held that " '[t]he most that can be said in such cases [i.e., of inconsistent verdicts] is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.' [*Steckler* v. *United States,* 7 F.2d 59, 60 (2d Cir. 1925)] . . . . That the verdict may have been the result of compromise, or a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters." *State* v. *Rosado,* supra, 709. Therefore, this claim is without merit.

## III

The defendant next claims that the trial court improperly denied his motion to suppress the fruits of a search of the defendant's automobile. Although the first issue is dispositive of this appeal, we discuss this claim because it is likely to arise at retrial. *State* v. *Rinaldi,* 220 Conn. 345, 359–60, 599 A.2d 1 (1991).[18]

The following additional facts are necessary to the resolution of this claim. On May 10, 1991, Officer Wayne Macuirzynski of the Stamford police department was conducting a surveillance operation with Sergeant Richard Caldwell and Officers Teresa Czarnecki

---

[18] The defendant also claims that the trial court improperly denied his motion to suppress certain inculpatory statements made to the police. "Although we recognize that this issue may arise again upon retrial of this case, we decline to review it at this time," as we cannot speculate the posture in which this issue may come before the court at such retrial. *State* v. *Duntz,* 223 Conn. 207, 237, 613 A.2d 224 (1992).

and Michael Correnty in the vicinity of Lione Park in Stamford. Macuirzynski was situated on the seventh floor of the Merrill Avenue housing complex from where he could observe the park and parking lot. While conducting the surveillance, Macuirzynski noticed Arthur Shaw, a man with whom he had prior dealings. A short time later, a maroon Toyota drove up and the defendant exited and approached Shaw and a third man. The defendant produced a plastic bag and took out an item that he handed to the third man. Macuirzynski concluded, on the basis of his training and experience, that a drug transaction was taking place and radioed this information to the other officers.

Shortly thereafter, another car drove into the park. The defendant immediately went over to this car, took out the plastic bag, handed a small item to the driver and received cash in exchange. The defendant then returned to his car and, with the plastic bag in his left hand on the steering wheel, began to drive away. The defendant then bent over, reached under the left side of the dashboard and came up without the bag, all the while continuing to drive out of the park.

The other officers, who were in an unmarked vehicle several blocks away, proceeded to look for a maroon Toyota driven by a man matching the defendant's description. They observed the vehicle driven by the defendant and followed it. The defendant stopped the Toyota near a bus stop, got out of his car, and approached the unmarked police car that was stopped behind it. The three officers exited their car and instructed the defendant to remain at the rear of his car. Czarnecki then approached the defendant's car, opened the driver's side door and smelled marijuana. She then reached under the dashboard, felt plastic bags, and pulled out a number of plastic bags that were confirmed to contain marijuana. The defendant was then placed under arrest. A search of the defendant pro-

duced over $1600 and a Motorola Page Net beeper. The defendant was then transported to the Stamford police department.

The defendant claims that the warrantless search of the automobile was not supported by probable cause and did not fit within the confines of the automobile exception to the fourth amendment and was therefore unconstitutional. We disagree.

We note at the outset that, while it is not this court's function to find facts, because the defendant challenges the trial court's factual and legal conclusions, we may look not only to the facts set forth in the memorandum of decision of the trial court, but to the evidence contained in the whole record to determine if those facts are clearly erroneous. *State* v. *MacNeil,* 28 Conn. App. 508, 515, 613 A.2d 216, cert. denied, 224 Conn. 901, 615 A.2d 1044 (1992).

"The Fourth Amendment to the United States constitution protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search and seizures. Ordinarily, police may not conduct a search unless they first obtain a search warrant from a neutral magistrate after establishing probable cause. [A] search conducted without a warrant issued upon probable cause is per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions. Three recognized exceptions to the warrant requirement, upon which the trial court relied, are (1) where searches have been undertaken incident to a lawful custodial arrest; (2) where there is probable cause to believe that a motor vehicle contained contraband or evidence pertaining to a crime; and (3) where the search has been conducted in order to inventory personal property lawfully taken into police custody. These exceptions have been jealously and carefully drawn and the burden is on the

state to establish the exception." (Citations omitted; internal quotation marks omitted.) *State* v. *Badgett,* 200 Conn. 412, 428–29, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986).

The justification for the automobile exception is two-fold: (1) the inherent mobility of an automobile creates exigent circumstances; and (2) the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office. *California* v. *Carney,* 471 U.S. 386, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1985); *Chambers* v. *Maroney,* 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970); *Carroll* v. *United States,* 267 U.S. 132, 153, 45 S. Ct. 280, 69 L. Ed. 543 (1925); *State* v. *Badgett,* supra; *State* v. *Kolinsky,* 182 Conn. 533, 538, 438 A.2d 762 (1980), cert. denied, 451 U.S. 973, 101 S. Ct. 2054, 68 L. Ed. 2d 354 (1981). This exception to the warrant requirement requires that the officers have probable cause to believe that the vehicle contains contraband. *Carroll* v. *United States,* supra, 153–54. The probable cause determination must be based on objective facts that could have justified the issuance of a warrant by a neutral magistrate at the time the search was made. *United States* v. *Ross,* supra, 808; *State* v. *Badgett,* supra, 429.

This automobile exception to the warrant requirement applies only to searches of vehicles that are supported by probable cause. The absence of probable cause, despite the exigency created by the ready mobility of automobiles and the lesser expectation of privacy in them, will render any warrantless search unreasonable. *Chambers* v. *Maroney,* supra, 51; *State* v. *Badgett,* supra; *State* v. *Federici,* 179 Conn. 46, 53–54, 425 A.2d 916 (1979). " 'Probable cause to search exists if (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . *and* (2) there is probable cause to

believe that the items sought to be seized will be found in the place to be searched.' (Emphasis in original; citations omitted.) *State* v. *DeChamplain,* [179 Conn. 522, 528–29, 427 A.2d 1338 (1980)] . . . ." *State* v. *Delmonaco,* 194 Conn. 331, 337, 481 A.2d 40, cert. denied, 469 U.S. 1036, 105 S. Ct. 511, 83 L. Ed. 2d 401 (1984).

The factual information available to the officers at the time they conducted the search of the defendant's vehicle is adequate to establish probable cause. The court, *Nigro, J.,* in its memorandum of decision on the motion to suppress found the following facts. The area of Lione Park in Stamford is a place where previous arrests had been made for narcotics transactions. Neighbors in the area surrounding the park had registered with the police a number of complaints regarding drug transactions. Macuirzynski was observing the area in question when the defendant drove his automobile into the park. Macuirzynski observed the defendant engage in what the officer believed, in light of his training and experience, to be a drug transaction. He then observed the defendant reenter his car and place the plastic bag involved in the drug transaction under the left side of the dashboard as he drove out of the park. Macuirzynski communicated this information to other officers in an unmarked police car in the area, who then followed the defendant's car once it left the park. The defendant stopped his car, without a signal from the following officers to do so, and approached the officers' car. In the training and experience of these officers, they have found that people who exit their cars and approach police officers often do so because they have something in their car that they do not want the police to find there. The collective information known to the police officers at the time the defendant's car was stopped and searched supports the finding of probable cause. The trial court's determination that such

probable cause existed is supported by the record. Therefore, we cannot conclude that these findings were clearly erroneous.

## IV

Finally, the defendant challenges the trial court's immediate revocation of his probation for a previous offense after he was convicted on the charge of possession with intent to sell. The defendant claims that the trial court improperly failed to follow the proper procedure for revocation of probation. We agree.

The revocation of probation is governed by General Statutes § 53a-32 and Practice Book § 943.[19] "[T]he Practice Book rule and the statute provide different procedures by which to commence probation revocation proceedings . . . . [T]he usual practice seems to

[19] General Statutes § 53a-32 provides: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. Any such warrant shall authorize all officers named therein to return the defendant to the custody of the court or to any suitable detention facility designated by the court. Any probation officer may arrest any defendant on probation without a warrant or may deputize any other officer with power to arrest to do so by giving him a written statement setting forth that the defendant has, in the judgment of the probation officer, violated the conditions of his probation. Such written statement, delivered with the defendant by the arresting officer to the official in charge of any correctional center or other place of detention, shall be sufficient warrant for the detention of the defendant. After making such an arrest, such probation officer shall present to the detaining authorities a similar statement of the circumstances of violation. Provisions regarding release on bail of persons charged with a crime shall be applicable to any defendant arrested under the provisions of this section. Upon such arrest and detention, the probation officer shall immediately so notify the court or any judge thereof. Thereupon, or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which he is alleged to have violated the conditions of his probation or conditional discharge, shall

be for the state to proceed under the statute. . . . Other cases have relied on the rule alone or on a combination of both." *State* v. *Carey,* 222 Conn. 299, 301, n.1, 610 A.2d 1147 (1992), and cases cited therein. Like *Carey,* "the issue of any disparity between the rule and the statute is not before us on this appeal." Id. There are present in probation revocation proceedings certain basic procedural due process safeguards. Among these are notice of the probation violation, a hearing, and an opportunity to present testimony and mitigating evidence and to cross-examine witnesses. *State* v. *Baxter,* 19 Conn. App. 304, 315–16, 563 A.2d 721 (1989).

be advised by the court that he has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in his own behalf.

"(b) If such violation is established, the court may continue or revoke the sentence of probation or conditional discharge or modify or enlarge the conditions, and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by reliable and probative evidence."

Practice Book § 943 provides: "In cases where the revocation of probation is based upon a conviction for a new offense and the defendant is before the court or is being held in custody pursuant to that conviction, the revocation proceeding may be initiated by a motion to the court by a probation officer and a copy thereof shall be delivered personally to the defendant. All other proceedings for revocation of probation shall be initiated by an arrest warrant supported by an affidavit or by testimony under oath showing probable cause to believe that the defendant has violated any of the conditions of his probation or his conditional discharge or by a written notice to appear to answer to the charge of such violation, which notice, signed by a judge of the superior court, shall be personally served upon the defendant by a probation officer and contain a statement of the alleged violation. All proceedings thereafter shall be in accordance with the provisions of Secs. 634 and 660. At the revocation hearing, the prosecuting authority and the defendant may offer evidence and cross-examine witnesses. If the defendant admits the violation or the judicial authority finds from the evidence that he committed the violation, the judicial authority may make any disposition authorized by law."

In this case, these safeguards were not present. The defendant's probation was revoked immediately after he was sentenced on the charge of possession with intent to sell. He was not given formal written notice as required by the statute or the rules of practice, nor was he given an opportunity to present testimony or mitigating evidence. There is no indication from the record that the trial court considered the whole record or established that the violation was supported by reliable and probative evidence. Therefore, the hearing did not comport with traditional notions of procedural due process and the judgment revoking the defendant's probation must be reversed.

The judgments of the trial court are reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.