(No. 13515.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ANDREW CHRFRIKAS, Plaintiff in Error.

*Opinion filed December 21, 1920.*

1. CRIMINAL LAW—*when indictment is not void because it does not correctly name prosecuting witness.* An indictment for abduction is not void because it gives the prosecuting witness the family name of her step-father, where the evidence clearly identifies the girl as the person named in the indictment and shows that she was known by that name among her acquaintances.

2. SAME—*accused should not be taken to private building for examination.* Where a person accused of a crime is taken into custody by public officials he should not be taken to a newspaper office or any other private building for the purpose of questioning him but should be taken to a public building where persons charged with crime are usually confined.

3. SAME—*previous taking of indecent liberties may be proved in trial for abduction.* In a trial for abduction, testimony of the complaining witness that a few weeks before the offense the defendant had taken indecent liberties with her is admissible.

4. SAME—*judge should not leave court room while trial is in progress.* During the progress of a criminal case the trial judge should not, without stopping the proceedings, leave the court room, even though he remains within hearing.

5. SAME—*improper argument as to another case may be prejudicial although stricken.* In a trial for abduction, counsel for the prosecution should not refer in argument to another case having no connection with the offense charged even though the case referred to is well known to the public, and such a statement may be prejudicial even though stricken out by the judge when objection is made.

6. SAME—*when a general verdict is sufficient.* A general verdict·finding the defendant "guilty of abduction in manner and form as charged in the indictment" is sufficient, where one count of the indictment charges abduction of a chaste, unmarried female for the purpose of prostitution and concubinage.

THOMPSON, FARMER and STONE, JJ., dissenting.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. HUGO PAM, Judge, presiding.

JACOB LEVY, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and GEORGE C. DIXON, (EDWARD E. WILSON, JAMES C. O'BRIEN, and JAMES E. MCSHANE, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is a writ of error to the criminal court of Cook county obtained by plaintiff in error, Andrew Chrfrikas, to reverse a judgment entered in that court on the verdict of a jury finding him guilty of the abduction of Stefka Avgares.

Stefka Avgares was the daughter of Rose Avgares by her first husband, whose name was Boudek. Stefka was between fourteen and fifteen years of age in August, 1919, when the plaintiff in error took her on a trip to Omaha, Nebraska. The girl testified that he told her mother and herself that he was going to take her to a picnic at Lincoln Park, in Chicago, and obtained their consent on that statement, but that instead he bought tickets to Omaha and took her there; that when he took her from her home he told her and her mother that he would bring her back not later than eight o'clock; that on the train she asked him where Lincoln Park was, and he said, "Just the next block;" that she told him she was going to complain to the conductor, and he said that he would slap her face if she did; that they were on the train all night, and when they were crossing a bridge (apparently just before they reached Omaha) she asked him, "Where is Lincoln Park?" and plaintiff in error answered, "This is Omaha, Nebraska," and said if she did not stop crying he would throw her off the bridge. She further testified that she asked him when they were going home, and he said in reply, "You will never see your father and mother again;" that he took her to a rooming house in Omaha owned by a Greek; that a woman who worked there, who was called Grace Mil-

ler, wore short dresses, smoked cigarettes and drank whisky with the men who came to the house and stayed in a room with men; that when plaintiff in error first saw Grace Miller he told her "this is the girl I was telling you about;" that she was finally discovered by the police and brought back to Chicago; that her mother, and a reporter for the *Chicago Evening American* named Delaney, met her at Clinton, Iowa, and came back with her on the train; that on the morning when she left with plaintiff in error for Omaha she had nothing with her except a picnic basket and the clothes she had on; that plaintiff in error bought her another dress in Omaha.

Stefka's mother testified that she was well acquainted with plaintiff in error and had done his laundry work for some time before he took the girl away; that he asked her before the trip if he might take the girl on a vacation, and that she trusted him because she knew him; that he told her he was going to take the girl to Omaha, and she said she was afraid her husband would beat her if that was permitted, and then it was agreed that he was going to take the girl to Lincoln Park. It is obvious from the testimony of the mother that she was on friendly terms with plaintiff in error at the time of the trial, and that she had stated to others before the trial, when they were planning to bring the girl back from Omaha and after she was brought back, that plaintiff in error had said he was only going to take the girl to Lincoln Park, although she testified at the time of the trial that she knew when plaintiff in error went away with the girl he was going to take her to Omaha and not to Lincoln Park.

Plaintiff in error testified he had been in this country six or seven years. He denied that he took Stefka away with him on the promise to her mother that he was only going to take her to Lincoln Park, and testified that the mother and girl both knew that she was to take a trip with him to Omaha and that both consented to the trip;

that he had worked before in Omaha and took her to a rooming house there with which he was acquainted and left her there until she was taken by the police and brought back to Chicago; that the new dress was bought by some other person in Omaha and not by him; that he could not have bought her anything there because his pockets had been picked of all the money he had. He further testified that on the train to Omaha the girl occupied the regular passenger car and he stayed in the smoking car during most of the time. He denied that there was any woman in the Omaha rooming house who drank whisky or went to rooms with men. He claimed that the girl bought the ticket to Omaha; that he simply took her there because she wanted a vacation; that he did not take any clothes along with him; that on the first night after they reached Omaha he went to a wrestling match, leaving her at the boarding house. He testified that he was struck by the reporter and the officer when he was in custody of the officer in Chicago and threatened with more violence if he did not tell the story as they wanted him to tell it. The reporter and the policeman testified that when plaintiff in error was taken into custody by the policeman he was taken by them to the third floor of the Hearst building, where the *Chicago American* is published, and there questioned. Plaintiff in error testified that while they were there he was treated brutally by the reporter and policeman. Both the reporter and the officer and others who were present testified that no force of any kind was used or threats made to plaintiff in error while he was in the building.

It is urged by counsel for plaintiff in error that the indictment is void because it alleges the name of the girl to be Stefka Avgares, while the proof showed that she was a daughter of the mother's first marriage to one Boudek. It is plain from the evidence that the girl was known as Stefka Avgares; that she called herself by that name; that her own father was dead; that she was living with her

mother and step-father as a member of his family and all her friends and acquaintances knew her by his name. Plaintiff in error introduced a note sent to him when he was in custody before the trial saying that she would marry him after she was sixteen years of age if he would wait, and this note was signed Stefka Avgares. There was no variance in the proof. It clearly identified the girl as the person named in the indictment, and such authorities as *People* v. *Smith,* 258 Ill. 502, and others there cited, are not in point on the question here raised on this record. There can be no question, under the reasoning of this court in *People* v. *Pilewski,* (*ante,* p. 58,) that the argument of counsel for plaintiff in error on this question is without merit.

Counsel for plaintiff in error also argues that the testimony of the reporter, Delaney, with reference to his conversation with plaintiff in error after the alleged crime, was improperly admitted. Delaney testified to some of the investigations that he made before the girl was found at Omaha and of his trip to Clinton, Iowa, with the girl's mother to meet Stefka on her way back from Omaha, and as to traveling and talking with the girl from Clinton to Chicago, and of his talk with plaintiff in error when he was taken into custody by the Chicago police. He stated that plaintiff in error admitted that he had taken the girl to Omaha, paying her fare there, and it does not appear from the testimony on this question that plaintiff in error denied making any of the statements testified to by Delaney or claimed that he had refused to answer any of the questions asked by the reporter. Practically everything testified to by Delaney as to alleged admissions by plaintiff in error was proven by other testimony on the trial. Of course, the argument of counsel for plaintiff in error that Chrfrikas should not have been taken to the Hearst building by the police officer for examination by Delaney in the officer's presence is entirely sound. When a person accused of a crime is taken into custody by the public officials he should

not be taken to a newspaper office or any other private
building but to a public building where persons charged with
crime are usually confined, such as a police station or jail.
The taking of an arrested person to a newspaper office for
the purpose of making inquiries of him as to an alleged
offense is entirely contrary to law and should not be sanc-
tioned, directly or indirectly, by public authorities, but we
cannot say from this record that plaintiff in error was in
any way injured as to the result of the trial by the fact
that he was taken to the Hearst building.

Counsel for plaintiff in error insists that the trial court
erred in admitting the testimony of the complaining wit-
ness, Stefka Avgares, that two or three weeks before the
trip to Omaha plaintiff in error had been in her room and
had taken indecent liberties with her. We think, under the
reasoning of this court in *People* v. *See,* 258 Ill. 152, and
*People* v. *Gray,* 251 id. 431, and cases there cited, this evi-
dence was properly admitted.

Counsel for plaintiff in error insists that reversible er-
ror was committed in the closing argument of counsel for
the State when he referred to the disappearance and mal-
treatment of a little girl, Janet Wilkinson, who was found
dead and buried in a coal pile in the basement of a Chi-
cago apartment building. It appears that this speech was
made partly in reply to the speech by counsel for the plain-
tiff in error in which Delaney and the newspapers generally
were sharply criticised for the part they take in criminal
trials and especially in trials of this character. Delaney
himself testified that he was a special writer for the *Chi-
cago American* on such cases as this one, and that was the
reason his attention was called to the disappearance of this
girl when complaint was made to the police by the mother,
and that all he had done in the case was done with a de-
sire to get the girl back and see that the law was enforced.
When the prosecutor was making the portion of the clos-
ing argument objected to, the presiding judge was not per-

sonally present in the room but was in chambers, within hearing of what was going on in the court room. When the objection was made he returned to the bench, stopped the prosecutor and sustained the objection, striking the statement from the record and stating to the jury that this reference by the prosecuting attorney to the Wilkinson case was very improper; that there should be no reference to any particular case in the argument of counsel.

Counsel for plaintiff in error insists that the absence of the trial judge, under the reasoning of this court in *Loftus* v. *Chicago Railways Co.* 293 Ill. 475, was reversible error. The trial judge should not be even temporarily absent from the court room while the trial of a case proceeds,—and particularly a criminal case,—even though he is within hearing. There can be no question that the reference by the prosecuting attorney to the case of the little girl, Janet Wilkinson, who had been recently killed, was serious error, even though the case was well known to the public generally. In commenting on a similar matter in *Earll* v. *People,* 99 Ill. 123, the court said (p. 136) : "When one is put upon his trial for a grave crime  *  *  *  it is highly improper for the prosecutor to do or say anything whose only effect will be to inflame the passions or arouse the prejudices of the jury against the accused without throwing any light upon the case in hand,  *  *  *  and in this case it would clearly have been the duty of the court to have stopped counsel in his remarks if its attention had been called to the matter. It is the duty of the court, on its own motion, to promptly suppress any attempt on the part of counsel to drag irrelevant matters into a case merely for the purpose of exciting the prejudices of the jury." This reasoning applies with full force here. Even though the trial judge was within hearing of what was going on in the court room, he could not promptly have stopped the remarks of the prosecuting attorney on his own motion. It would be necessary first for him to return to the court room. In pro-

ceedings of this character it would be difficult to suggest a case that would arouse the passions and prejudices of the jury more than the reference by the prosecutor to the Janet Wilkinson case.   (See, also, as bearing on this question, *Fox* v. *People,* 95 Ill. 71, *McDonald* v. *People,* 126 id. 150, and *People* v. *McMahon,* 244 id. 45.)   The fact that the statement of the prosecutor was stricken out, on motion, after the judge returned to the court room could not take from the minds of the jurors the effect of the speech any more than the placing of a blotter upon an ink blot could remove entirely the effects of the blot of ink from a clean white sheet.

Counsel for plaintiff in error further argues that reversible error was committed in that the verdict was not responsive to the indictment.   The indictment contained four counts.   The first charged plaintiff in error with decoying and kidnaping Stefka Avgares with intent to conceal and imprison her.   The second charged him with forcibly carrying and sending the girl out of the State with intent to conceal and imprison her.   The third charged him with enticing her to leave the State for the purpose of concealing and imprisoning her; and the fourth that he "unlawfully, willfully and feloniously did entice and take away one Stefka Avgares, then and there being an unmarried female of chaste life and conversation, from the home of one John Avgares for the purpose of prostitution and concubinage."   The verdict of the jury was worded as follows:   "We, the jury, find the defendant, Andrew Chrfrikas, guilty of abduction in manner and form as charged in the indictment; and we further find from the evidence that said defendant, Andrew Chrfrikas, is now between the ages of sixteen and twenty-six years of age and is about twenty-four years of age."   Section 1 of the Criminal Code of this State justifies conviction when a person is convicted for abducting an unmarried female of chaste life and conversation for the purpose of prostitution and concubinage.

(Hurd's Stat. 1917, p. 937.)   What was said by this court
in *Curtis* v. *People,* Breese, 256, *People* v. *Jones,* 242 Ill.
138, and *People* v. *Kuhn,* 291 id. 154, fully answers the
objections of counsel for plaintiff in error on this point.
The general verdict, under these authorities, authorized the
judgment.

Other errors are charged by counsel for plaintiff in er-
ror with reference to proof as to venue and as to marking
some of the instructions, but as the alleged errors com-
plained of are not liable to occur on another trial, and as
this case must be reversed for the reasons already stated,
we do not deem it necessary to consider or discuss these
other questions.

The judgment of the criminal court is reversed and the
cause remanded to that court for further proceedings con-
sistent with the views herein expressed.

*Reversed and remanded.*

THOMPSON, FARMER and STONE, JJ., dissenting:

This judgment is reversed solely on the grounds that
the State's attorney made an improper reference to the
horrible killing of little Janet Wilkinson and that the trial
judge left the court room during the course of the argu-
ments of counsel to the jury.   We agree fully with the court
in holding both acts serious error, and if the jury had any-
thing to do with fixing the punishment and the punishment
had been unusually severe, then the errors would have de-
manded a reversal of the judgment.   As it is, we think the
record shows plaintiff in error so clearly and conclusively
guilty that the jury could not reasonably have returned any
verdict other than one of guilty.   A verdict of guilty car-
ried with it imprisonment in the penitentiary for an inde-
terminate period, and the errors, therefore, ought not to
be held reversible in this particular case.