THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM B. BOLTON, Plaintiff in Error.

*Opinion filed February 16, 1927.*

1. CRIMINAL LAW—*what evidence is admissible to identify defendants.* In a prosecution for robbery, where the defense is an alibi and the parties robbed have identified the defendant as one of the robbers, it is not error to permit them to state that the defendant had called at the place of business of the witnesses on two previous occasions; and the statement of one of the witnesses that the defendant on one of those occasions had given worthless checks, although incompetent, cannot be regarded as prejudicial, where the court instructs the jury to disregard the statement that the checks were worthless.

2. SAME—*when court may suggest necessity of proof of venue.* Proof of venue is required, and where such proof is overlooked by the State's attorney the court may call attention to the omission during the taking of the State's evidence, provided it is done in a fair and impartial manner and there is no intimation in the suggestion made by the court that he thought the defendant guilty of the crime charged.

3. SAME—*general rule as to when court may aid counsel during trial.* It is the court's duty to see that justice is done, and where justice is liable to fail because a certain fact has not been developed or a certain line of inquiry has not been pursued it is the duty of the court to interpose and either by suggestions to counsel or by an examination conducted by himself to obviate the miscarriage of justice, but in so doing he must not forget the function of the judge and assume that of the advocate.

4. SAME—*when absence of trial judge during examination of jury will not reverse.* The trial judge should remain on the bench during the selection of the jury, but where a temporary absence of the judge is not shown to have been prejudicial, and the court's own statement shows that he was in an ante-room and could hear all that took place, the error in the court's action will not require a reversal.

5. SAME—*when judgment of conviction will not be reversed—alibi.* Where the case depends merely upon the credibility of witnesses, who on the one side identify the accused as the guilty party and on the other testify to an alibi, the Supreme Court will not substitute its judgment for that of the jury unless it is clear that there is a reasonable doubt of guilt and that the jury made a mistake or that they acted from passion or prejudice.

WRIT OF ERROR to the Circuit Court of Washington county; the Hon. J. F. GILLHAM, Judge, presiding.

J. PAUL CARTER, and T. M. WEBB, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, H. H. HOUSE, State's Attorney, and MERRILL F. WEHMHOFF, for the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

William B. Bolton was indicted by the grand jury at the April, 1926, term of the circuit court of Washington county for robbery while armed with a dangerous weapon. By the jury's verdict he was found guilty as charged. Motions for a new trial and in arrest of judgment were made and overruled and he was sentenced to the Southern Illinois penitentiary. He seeks a reversal of the judgment by this writ of error.

Cecil Tucker, Fred Tucker and Verne Tucker, co-partners by the style of Tucker Bros., conducted a garage at the junction of routes 2 and 15 of the State highways, about two miles west of the city of Ashley, in Washington county. The building occupied by them faced south on route 15. The office and accessory room occupied the east side or portion of the building. The front of the building had two sliding doors, through which automobiles entered the garage, and also a single door to gain entrance to the office. A counter ran parallel to and near the east wall of the office. There was also a door which opened from the office to the garage. On December 8, 1924, plaintiff in error, while driving a Chevrolet automobile with a cracked cylinder head, stopped at the garage between three and four o'clock in the afternoon to have the necessary repairs made. He remained at the garage until eight or nine o'clock, when he was taken to Ashley by Verne Tucker. Plaintiff in er-

ror returned to the garage about two o'clock in the morning of the next day, paid for the work done by two checks for five dollars each, drawn by his father to his order and endorsed by him, received his car from Fred Tucker and drove away. About a week later plaintiff in error and his brother stopped at the garage when Cecil and Verne Tucker and David Tucker, their father, were present. The checks had not been deposited in a bank and plaintiff in error offered a ten-dollar bill to Cecil Tucker to redeem them, but upon the suggestion of the brother of plaintiff in error that they might need the money and that the checks were good, Cecil Tucker retained them.

The evidence on the part of the State shows that shortly before ten o'clock P. M. on January 10, 1925, while Cecil and Fred Tucker were preparing to close their place of business for the night, three men entered the office, one of whom inquired, "Have you got a mechanic?" immediately following which one of the other men asked the same question. Cecil was behind the counter and Fred was west of it. The former answered affirmatively and asked, "Where is your car?" They replied, "Up the road," and drew their guns. One of the men caught hold of Fred and pushed him back against the wall. Another with a sawed-off shotgun pointed it at Cecil's head, and as the latter attempted to reach for his revolver, the third man, who was plaintiff in error, jumped over the counter and held a revolver against Cecil's body. The revolver was taken from Cecil and he was compelled to hold up his hands. Plaintiff in error then left the office with a pistol in each hand and entered the garage, stating that he would "get the other one," apparently meaning Verne Tucker. One of the men answered, "Kill anything you see; don't take no chances." Verne was not in the garage at the time, and plaintiff in error returned to the office and with his two accomplices forced Cecil and Fred to go into the garage and to lie on the floor, face downward. Cecil turned to watch the men,

and when the plaintiff in error observed his position, commanded him, in profane language, to turn his head, and pulled his cap down over his eyes. The brothers were then bound and gagged, their overalls were cut at the sides from the shoulders down, and papers, letters and money were taken from their pockets. While Cecil lay on the floor he heard an automobile driven under the canopy of the garage, the cash register opened and chattels removed through an east window. The lights were turned out, and the man with the shot-gun said that he would stand guard for twenty minutes and that he would kill the person who moved. After the robbers left, Cecil was the first to extricate himself from his bonds and he then cut the ropes from his brother's hands and feet. They returned to the office, and the clock showed that it was 10:07 P. M. Cecil immediately went to Ashley and by telephone notified the chiefs of police of the cities of Mt. Vernon, Centralia, Carbondale, Benton and Marion of the robbery. Later it was discovered that ten automobile tires, forty-five inner tubes, four or five boxes of cigars, six cartons of cigarets and about ten boxes of candy, of the value of $339.71 at wholesale, and two revolvers, a double-barreled shot-gun, an overcoat, a suit of clothes and $79 in money had been taken.

The foregoing is substantially the testimony of the two brothers who were robbed. Their testimony with reference to the presence of plaintiff in error at the garage on the two occasions in December, 1924, was corroborated by their father, David Tucker.

Nearly a year later, on December 7 or 8, 1925, plaintiff in error again stopped at the garage and bought some oil for his automobile. The checks given for the work done on December 8, 1924, had been returned unpaid, and Verne Tucker inquired of him whether his name was Bolton and whether he was the person who had given the worthless checks. He replied that his father had paid them. His

present and former employments were also discussed. When plaintiff in error left the garage Verne first followed him to Ashley and then proceeded to Nashville, the county seat, where he requested the sheriff to apprehend plaintiff in error. The latter's arrest at Centralia occurred shortly afterwards.

On the part of plaintiff in error, C. F. Bolton, his father, testified that on January 10, 1925, he, the father, resided at 730 North Euclid avenue, in the city of St. Louis, about eight miles west of the Mississippi river and approximately seventy miles from Tucker Bros.' garage; that he had conducted a food manufacturer's advertising and selling campaign among retail merchants in southern Illinois and that plaintiff in error worked with him until that campaign closed, about December 20, 1924; that immediately thereafter plaintiff in error was employed at the Chevrolet automobile plant in St. Louis and continued to work there until October, 1925, and that he then returned to southern Illinois to assist the witness in a food brokerage business which the latter had established at Marion, in Williamson county.

Plaintiff in error admitted that he called at Tucker Bros.' garage on December 8, 1924, and again about a week later, accompanied by his brother, but denied that he had any part in the robbery. January 10, 1925, was a Saturday, and he testified that he remained in his room, at 730 North Euclid avenue, in St. Louis, during the whole evening of that day; that Joseph Roither and Katherine, his wife, resided on the first floor of the same house, and that Clemens and Edward Kremel, Mrs. Roither's brothers, occupied a room on the second floor; that he saw Roither after eight o'clock and Mrs. Roither between nine and ten o'clock on that evening, and that he was in the presence of Clemens Kremel from 1:00 P. M., and of Edward Kremel from 5:30 P. M., until after 11:00 P. M. on that day. These persons testified that they were not related to plaintiff

in error; that they saw him at 730 North Euclid avenue, St. Louis, on the evening in question at the hours stated, and that they fixed the date because of the death of Mr. and Mrs. Roither's infant daughter on the 6th and her burial on the 7th of the same month. These witnesses, and two others, a real estate broker and a dealer in automobile supplies, testified that the general reputation of plaintiff in error for truth and veracity was good.

It is contended that it was error to admit the checks given on December 9, 1924, and also what was said concerning the checks about a week later. The question of identification is important in a case where the defense is an alibi. In order to show that Cecil and Fred Tucker had opportunities to become acquainted with plaintiff in error and to recognize him, it was competent to prove that they had seen him at the garage twice in December, 1924, and the giving of the checks and the discussion with reference to them on the two occasions, respectively, tended to establish these facts.

Complaint is also made of Verne Tucker's inquiry of plaintiff in error, when he called at the garage in December, 1925, whether he was the person who had given the worthless checks and of the latter's affirmative reply, because, it is said, the question and answer showed the commission of another and distinct offense. The court instructed the jury to disregard the statement that the checks were worthless. Under this instruction it does not appear that the admission of the statement, although incompetent, was prejudicial to the plaintiff in error.

It is further contended that the court erred in sustaining the State's objection to a question asked C. F. Bolton whether in going from his home to the bridges across the Mississippi river on a Saturday evening he would be compelled to pass through congested traffic in the streets of St. Louis. An affirmative answer, it is argued, would have had a tendency to strengthen the alibi of plaintiff in error,

for it would have shown the difficulty, if not impossibility, of reaching Tucker Bros.' garage, seventy miles distant, in about an hour after Joseph Roither had seen plaintiff in error in his room. The facts concerning the distance from 730 North Euclid avenue, St. Louis, to Tucker Bros.' garage, and the intervening conditions of travel, were otherwise adduced. Nor did plaintiff in error rely solely upon Joseph Roither to establish his alibi. Mrs. Roither testified that she saw plaintiff in error in his room between nine and ten o'clock on the night in question, and the two Kremel brothers testified that they saw him there until after eleven o'clock on the same night. It was the jury's province to draw conclusions of fact from the whole evidence, and there was no prejudicial error in sustaining the objection to the question.

When Joseph and Katherine Roither were cross-examined it was shown that the father of plaintiff in error was their tenant at the time the robbery was committed. To counteract, it is said, the inference that they were friends because of that relationship, counsel for plaintiff in error asked the father where he was living at the time of the trial. The court inquired what that fact had to do with the case. Counsel for plaintiff in error offered no explanation and made no objection to the court's question but immediately asked the witness the street number of his home on January 10, 1925, and the question was answered. It is now insisted that the court's question was prejudicial to plaintiff in error. The contention is without merit.

Plaintiff in error offered a certificate of the death of the infant child of Mr. and Mrs. Roither. It was excluded, and complaint is made of the ruling. Five witnesses, the parents of the child, plaintiff in error and Clemens and Edward Kremel, testified that the child died on the sixth and was buried on the seventh of January, 1925, and these facts were undisputed. The witnesses fixed the evening of January 10 as the time when plaintiff in error was present

in his room by making reference to the child's death earlier in the week. The reference was made for no other purpose, and the exclusion of the certificate was harmless.

The trial judge suggested to the State's attorney, at the conclusion of the direct examination of the first witness for the prosecution, the necessity of proving the venue, and it is insisted that the making of the suggestion constitutes reversible error. Proof of the venue is required, and in the event such proof is overlooked by the State's attorney the court may call attention to the omission in a fair and impartial manner. It is the judge's duty to see that justice is done, and where justice is liable to fail because a certain fact has not been developed or a certain line of inquiry has not been pursued, it is his duty to interpose and either by suggestions to counsel or an examination conducted by himself to obviate the miscarriage of justice, but in so doing he must not forget the function of the judge and assume that of the advocate. (*O'Shea* v. *People,* 218 Ill. 352; *People* v. *Bernstein,* 250 id. 63; *People* v. *Lurie,* 276 id. 630.) There was no intimation to the jury in the suggestion made by the trial judge that he thought plaintiff in error guilty of the crime charged.

Five instructions requested by plaintiff in error, it is contended, were erroneously refused. We have examined these instructions but do not deem it necessary to review them at length. Suffice it to say that two of them were inapplicable to the case, another contained an incorrect statement of law, and the remaining two were upon subjects covered by other given instructions. The five instructions were properly refused.

On the motion for a new trial an affidavit was presented setting forth that during the progress of the trial the judge sentenced two persons upon pleas of guilty and lectured them upon their past conduct in a manner prejudicial to plaintiff in error. There was another affidavit that the judge was absent part of the time during the selection of

the jury and again while the closing arguments were made. Three of the jurors in the instant case and the bailiff made counter-affidavits and the judge incorporated a statement in the record, all to the effect that none of the jurors in this case were present when the two prisoners were sentenced or the remarks addressed to them were made. The trial judge added in his statement that he was in an anteroom adjoining the bench while the jury was selected and could hear what was said in the court room; that he was probably called upon twice to determine whether a juror to whom objection was made should be excused, and that he was at the left of the bench in the court room throughout the arguments and could hear all that was said. The two prisoners who pleaded guilty were sentenced and lectured, it satisfactorily appears, out of the presence of the jury in the instant case, and while the trial judge should have remained on the bench during the selection of the jury, the facts disclose no such error as will require another trial.

It is contended, although not argued as a separate question, that the evidence does not support the verdict. The defense in the case was an alibi and the testimony was in direct conflict. It was for the jury to determine the credibility of the witnesses. Where the case depends merely upon the credibility of witnesses who on the one side identify the accused person as the guilty party and on the other testify to an alibi, this court will not substitute its judgment for that of the jury unless it is clear that the jury has made a mistake or has acted from passion or prejudice. (*People* v. *Davis,* 318 Ill. 179; *People* v. *Daniels,* 317 id. 80; *People* v. *True,* 314 id. 89; *People* v. *McGuirk,* 312 id. 257; *People* v. *Hildebrand,* 307 id. 544; *People* v. *Fisher,* 303 id. 594.) Upon this record it is impossible to say that plaintiff in error and his witnesses are so completely entitled to belief as against the witnesses for the prosecution as to make it manifest that there is a reasonable doubt of

his guilt. In such a situation the verdict cannot be set aside on the ground that it is not sustained by the evidence.

We find no reversible error in the record, and the judgment of the circuit court is affirmed.

*Judgment affirmed.*