NOTICE: Under Supreme Court Rule 367 a party has 21 days after the

filing of the opinion to request a rehearing. Also, opinions are

subject to modification, correction or withdrawal at anytime prior

to issuance of the mandate by the Clerk of the Court. Therefore,

because the following slip opinion is being made available prior to

the Court's final action in this matter, it cannot be considered

the final decision of the Court. The official copy of the following

opinion will be published by the Supreme Court's Reporter of

Decisions in the Official Reports advance sheets following final

action by the Court.

                                    

                  Docket No. 79044--Agenda 5--May 1996.

    THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ISRAEL VARGAS,

                               Appellant.

                    Opinion filed November 21, 1996.

                                    

     JUSTICE McMORROW delivered the opinion of the court:

     The question presented in this case is whether a trial judge's

absence from the courtroom during a portion of the cross-

examination of a witness at a murder jury trial constitutes per se

reversible error, or whether prejudice to defendant must be shown

in order to warrant reversal. We hold that judicial absence during

a felony trial constitutes per se reversible error.

                                Background

     The record in the present case reveals that in December 1990,

defendant, Israel Vargas, was tried and convicted by a jury in the

circuit court of Cook County for first degree murder on an

accountability theory. The State's evidence at trial was

essentially as follows. On January 17, 1990, at approximately 9:30

p.m., defendant, Raphael Padilla, and James Kallenborn, all members

of the Satan Disciples street gang, discussed "putting a hit" on a

member of the Vice Lords, a rival gang, in retaliation for a

previous shooting incident between the two gangs. Later that

evening, shortly before 10 p.m., the three men were walking along

63rd Street toward Artesian Avenue when they saw the victim, Alvin

Gill, in front of a residence located on Artesian. Defendant,

Padilla, and Kallenborn believed that the victim was a member of

the Vice Lords because the bill of the victim's cap was positioned

off to the left, indicating to them that he was a member of a rival

gang.

     Upon seeing the victim, Padilla pulled out a gun and fired a

shot at the victim. In response, the victim turned to one side and

ran eastbound into an alley. Defendant, Padilla, and Kallenborn

chased the victim into the alley, where the victim was shot again.

The victim died from gunshot wounds inflicted by Padilla.

     The trial judge's absence in this case occurred as testimony

was being elicited from Assistant State's Attorney Michael Vittori.

During the State's direct examination of Vittori, Vittori read into

evidence a handwritten statement taken by him from defendant

wherein defendant describes, in detail, his involvement in the

victim's murder. Shortly after defendant's attorney began his

cross-examination of Vittori, the trial judge briefly excused

himself from the courtroom. On this matter, the record reveals that

the following occurred:

               "THE COURT: Excuse me, Mr. Flanagan [defense

          counsel]. I have Judge Brady on the phone. You can

          continue. If you need me, let me know.

          (Judge exited.)

               MR. FLANAGAN: Q. Now, your job as a State's Attorney

          is to prosecute for the People of the State of Illinois,

          is that correct?

               A. That is correct.

               Q. And that is what you were doing January 18th of

          1990, isn't that right?

               A. I was a prosecutor at that time, yes.

               Q. And you were working in Felony Review?

               A. That is correct.

               Q. And I believe you told the ladies and gentlemen

          of the jury that when you work Felony Review you assist

          in the investigation of cases, isn't that right?

               A. Yes.

               Q. And you gather evidence?

               A. Yes. We talk to witnesses, we talk to defendants

          if they are willing to talk with us.

               Q. And the purpose of that is ultimately to be used

          in court, isn't that right?

               A. Yes.

               Q. That is what you told [defendant] when you spoke

          to him on January 18th, isn't that right, anything that

          he'd say would be used in court, didn't you tell him

          that?

               A. That['s] right. I did inform him of, yes.

               Q. And that is part of your job, isn't it?

               A. Yes.

               Q. So when you were talking to [defendant] you were

          acting as an attorney for the State of Illinois and not

          as his attorney?

               A. Yes. That is what I told him.

               Q. And your job as a State's Attorney was to gather

          evidence to prosecute [defendant], isn't that right?

               A. No. We gather information--

               MS. RODI [prosecutor]: Objection.

               MR. FLANAGAN: Miss Court Reporter, could you make a

          note of where that is and then I can continue along

          another line.

               Any objection counsel?

               MS. RODI: No.

               MR. FLANAGAN: Q. Now, in January of this year how

          long had you been working as a State's Attorney?

               A. In January of 1990 I had been working, it wasn't

          four years yet because I started in June of 1986.

               (Judge entered.)

               MR. FLANAGAN: Judge, we did have an objection and it

          was one question ago. Maybe we could go back to that

          question. I would respectfully ask for your ruling.

               THE COURT: You ask for what?

               MR. FLANAGAN: Your ruling.

               THE COURT: Well, what is the question?

               MR. FLANAGAN: If the court reporter can read it

          back?

               THE COURT: All right.

               (The Court Reporter read the record.)

               And there was an objection to that?

               MR. FLANAGAN: Yes.

               THE COURT: Overruled. He may answer."

     After Vittori's testimony, the State rested its case in chief.

The defense rested without presenting any evidence. Following

closing arguments, the jury found defendant guilty of first degree

murder. The court subsequently sentenced defendant to serve a term

of 35 years' imprisonment.

     Defendant sought review of his conviction in the appellate

court arguing, inter alia, that the trial judge's absence during a

portion of the cross-examination of Vittori was plain error which

mandated a reversal of his conviction. The appellate court held

that the trial judge's absence was error, but determined that the

error was harmless. 271 Ill. App. 3d at 341. We subsequently

granted defendant's petition for leave to appeal. 155 Ill. 2d R.

315.

                                 Analysis

     The sole issue which defendant asks us to review is the

correctness of the appellate court's conclusion that the trial

judge's absence during Vittori's cross-examination was harmless

error. Defendant's position on this issue is twofold. Defendant

contends that a trial judge's absence during the presentation of

evidence at a felony criminal jury trial constitutes per se

reversible error. In the alternative, defendant argues that even

assuming that such absence does not amount to per se reversible

error, reversal is still warranted because a trial judge's absence

is error and, in the present case, defendant suffered prejudice

from that error.

     Defendant's contention that the trial judge's absence in this

case constitutes per se reversible error is based in large part on

the defendant's theory that a trial judge's presence throughout the

trial is necessary to preserve the integrity and reputation of the

judicial process. Defendant argues that the judge's presence is

required to prevent inattentiveness on the part of jurors, improper

conduct by the attorneys, and general disorderliness in the

courtroom during a criminal jury trial, which have the potential of

prejudicing defendant. Defendant further maintains that jurors

expect that a judge will always be present during the course of the

proceedings and that the judge's absence may cause jurors to

believe that evidence presented during the judge's absence is, in

the judge's opinion, of lesser importance.

     Defendant contends that even if the absence of the trial judge

did not constitute per se reversible error, defendant's conviction

should be reversed because Vittori "was the single most important

witness in this case, for he testified to a statement supposedly

made to him by [defendant], and the State's claim of accountability

rested primarily on this statement." Defendant argues that the

judge's decision to leave the courtroom in order to take a phone

call during the cross-examination of Vittori prejudiced defendant

by creating the impression that the judge did not consider the

cross-examination to be significant. Defendant also claims that any

inattention or distraction by the jurors which might have been

caused by the judge's absence during the cross-examination of this

critical witness was likely to prejudice defendant.

     The State initially counters that defendant has waived review

of the trial judge's absence. The State points out that defendant

did not object to the judge's absence at trial but instead

proceeded, in the trial judge's absence, to continue with the

cross-examination of Vittori. The State also points out that

defendant did not raise an objection to the trial judge's absence

in a post-trial motion. The State argues that these inactions,

either individually or collectively, are sufficient to preclude our

review of defendant's challenge to the trial judge's absence.

     In the alternative, the State contends that even if

defendant's objection to the trial judge's absence in the instant

case is reviewable, the appellate court correctly held that such

absence did not amount to reversible error. The State disagrees

with defendant's position that the trial judge's absence

constitutes per se reversible error in the present case. Instead,

the State argues that the appellate court correctly interpreted the

decisions of this court to conclude that a trial judge's absence

during a portion of a criminal jury trial, without a showing of

prejudice to defendant, is harmless error. The State maintains

that, in the present case, the trial judge's absence from the bench

was harmless error because defendant was actively proceeding with

the cross-examination of Vittori in the trial judge's absence, the

trial judge was in effective control of the proceedings during his

absence from the bench, and nothing prejudicial to defendant

happened during the judge's absence from the bench. The State

maintains that considering the judge's absence in this light, the

trial judge's absence in the instant case was harmless error.

     We begin our analysis by noting that the State is correct in

its assertion that any error arising from defendant's failure to

object to the trial judge's absence would generally be considered

waived. Ordinarily, a defendant must object to alleged errors at

trial and include the objection in a post-trial motion in order to

preserve the issue for appellate review. People v. Enoch, 122 Ill.

2d 176, 186 (1988). In this case, defendant did not object to the

judge's absence either at trial or in a post-trial motion and, as

a result, review of such absence would normally be deemed waived.

     The waiver doctrine, however, is not absolute. Supreme Court

Rule 615(a) provides that plain errors affecting substantial rights

may be reviewed on appeal, though not objected to at trial and in

a post-trial motion. 134 Ill. 2d R. 615(a). The purpose of the

plain error rule is to afford certain protections to the accused by

correcting serious injustices and to preserve the integrity and

reputation of the judicial process. See People v. Young, 128 Ill.

2d 1, 46 (1989). This court has observed that the plain error rule

may be invoked in criminal cases in two limited circumstances. See

People v. Hobley, 159 Ill. 2d 272, 310 (1994); People v. Herrett,

137 Ill. 2d 195, 209 (1990); Young, 128 Ill. 2d at 47; People v.

Carlson, 79 Ill. 2d 564, 576-77 (1980). First, where the evidence

is closely balanced, a reviewing court may consider a claimed error

which was not properly preserved, so as to preclude argument that

an innocent person may have been wrongly convicted. See Hobley, 159

Ill. 2d at 310; Herrett, 137 Ill. 2d at 209; Young, 128 Ill. 2d at

47; Carlson, 79 Ill. 2d at 576. Second, a reviewing court may

invoke the plain error rule to review waived errors which are of

such magnitude that there is a substantial risk that the accused

was denied a fair and impartial trial, and remedying the error is

necessary to preserve the integrity of the judicial process. See

Hobley, 159 Ill. 2d at 310; Herrett, 137 Ill. 2d at 214; Young, 128

Ill. 2d at 47; Carlson, 79 Ill. 2d at 576-77.

     Although the evidence in the case sub judice is not closely

balanced, we believe that the second prong of the plain error rule

should be invoked to review the judge's absence from the bench. The

plain error rule permits a reviewing court "to take notice of

errors appearing upon the record which deprive the accused of

substantial means of enjoying a fair and impartial trial." People

v. Howell, 60 Ill. 2d 117, 121 (1975); see also People v. Sanders,

99 Ill. 2d 262, 273 (1983); People v. Pickett, 54 Ill. 2d 280, 283

(1973). A reviewing court will grant relief under the second prong

of the plain error rule only if the error is so fundamental to the

integrity of the judicial process that the trial court could not

cure the error by sustaining an objection or instructing the jury

to disregard the error. See Herrett, 137 Ill. 2d at 215; Carlson,

79 Ill. 2d at 577.

     In our view, two policy concerns support the conclusion that

the judge's absence from the bench in the present case is

reviewable under the plain error rule. First, a judge's active

presence on the bench during a criminal jury trial is an essential

safeguard which aids in providing a defendant with a fair trial.

Second, we believe that a judge's absence from the bench might

unduly influence the attitude of jurors so as to deny defendant an

impartial trial. We discuss each of these points in turn.

     During a criminal jury trial, a necessary function of the

trial judge is to supervise the courtroom, rule on objections as

they arise during the course of the proceedings, and deter any

objectionable conduct to the detriment of the defendant. In this

regard, a trial judge's active presence on the bench helps to

ensure that the defendant will have a fair trial. This court has

observed that without the trial judge's presence in the courtroom,

there is no judicial authority which can observe, cure, and deter

objectionable conduct which may have the effect of prejudicing the

defendant in the minds of the jury. See People v. Chrfrikas, 295

Ill. 222, 228-29 (1920). In Chrfrikas, while the trial judge was

out of the courtroom, the prosecutor referred to a well-known

atrocious crime of that era. This court concluded that the

reference was likely to inflame the passions and prejudices of the

jury to the detriment of defendant. In reversing defendant's

conviction and ordering a new trial, this court observed that a

trial judge's presence during the proceedings is necessary to

ensure that defendant receives a fair trial. The court noted that

"[t]he trial judge should not be even temporarily absent from the

court room while the trial of a case proceeds" because " `[i]t is

the duty of the court, on its own motion, to promptly suppress any

attempt on the part of counsel to drag irrelevant matters into a

case merely for the purpose of exciting the prejudices of the

jury.' " Chrfrikas, 295 Ill. at 228, quoting Earll v. People, 99

Ill. 123, 136 (1881). This court stated:

          "Even though the trial judge was within hearing of what

          was going on in the court room, he could not promptly

          have stopped the remarks of the prosecuting attorney on

          his own motion. It would be necessary first for him to

          return to the court room. *** The fact that the statement

          of the prosecutor was stricken out, on motion, after the

          judge returned to the court room could not take from the

          minds of the jurors the effect of the speech any more

          than the placing of a blotter upon an ink blot could

          remove entirely the effects of the blot of ink from a

          clean white sheet." Chrfrikas, 295 Ill. at 228-29.

     A judge's absence from the bench during the course of the

trial may create a negative impression in the minds of the jury to

the detriment of the defendant. This court has explained that

"[j]urors are ever watchful of the attitude of the trial judge and

his influence upon them is necessarily and properly of great

weight, thus his lightest word or intimation is received with

deference and may prove controlling." People v. Marino, 414 Ill.

445, 450-51 (1953); see also People v. Sprinkle, 27 Ill. 2d 398,

403 (1963). In Durden v. People, 192 Ill. 493, 508 (1901), the

trial judge, after presiding over the trial up to and including a

portion of defense counsel's closing argument, absented himself

from the proceedings and did not return until the hearing on the

motion for a new trial. Without prior notice to the parties,

another judge presided over the proceedings during the interim

period. See Durden, 192 Ill. at 508. In holding that the presiding

judge's absence from the proceedings required an automatic reversal

of defendant's conviction, this court in Durden observed that

because a single judge had presided over the most of the trial,

that judge's absence may have created a negative impression in the

minds of the jurors:

               "It is impossible for us to say that no injury

          resulted to [defendant] from the substitution, in the

          manner heretofore indicated, of one judge for another

          during the trial of the cause. *** It cannot be known

          what impression this change may have made upon the minds

          of the jury to the prejudice of [defendant]." Durden, 192

          Ill. at 507.

     We are of the view that just as an unwarranted substitution of

judges after most of the trial has transpired has the potential of

affecting the jury's impartiality to the detriment of the

defendant, the sudden absence of the trial judge in the present

case had similar potency. In this case, the presiding trial judge

totally absented himself from the proceedings during the testimony

of the final witness in defendant's trial. As in Durden, we cannot

say that the presiding judge's sudden absence did not affect the

impartiality of the jurors and thereby result in prejudice to

defendant. Therefore, we are persuaded that the presiding trial

judge's total absence from a portion of the proceedings during

defendant's murder trial must be viewed as so detrimental to the

integrity and reputation of the judicial process as to constitute

plain error and require reversal for new trial.

     We have set forth above the policy reasons why we view the

trial judge's absence from the bench during defendant's prosecution

as plain error requiring relaxation of the waiver doctrine. For

similar reasons of policy we also hold that the nature of the

error--total judicial absence for a portion of a felony trial--is

per se reversible because such error is inherently prejudicial, not

only to defendant's right to a fair trial but also to the integrity

of the judicial process.

     The appellate court relied on precedent from this court in

support of its conclusion that error arising from the judge's

absence from the courtroom should be subject to harmless error

analysis requiring a specific showing of prejudice to defendant.

Accordingly, we examine the prior cases of this court, dating back

to the nineteenth century, which have considered issues involving

judges' absence from court proceedings.

     In reaching its conclusion that the trial judge's absence in

the present case was harmless error, the appellate court stated

that "in each case where the supreme court has had occasion to

address the issue of a judge's absence from the bench, the court,

while specifically disapproving of the practice, has reversed only

where the defendant suffered prejudice as a result of the judge's

absence." 271 Ill. App. 3d at 341. The appellate court concluded

that the trial judge's absence during Vittori's cross-examination

in the case at bar was harmless error because, in its view,

defendant suffered no demonstrable prejudice resulting from the

judge's absence.

     We disagree with the appellate court's holding that Illinois

precedent compels the conclusion that the trial judge's absence

during a portion of defense counsel's cross-examination of Vittori

amounted to harmless error. The appellate court misinterpreted this

court's decisions in Meredeth v. People, 84 Ill. 479, 482-83

(1877), Thompson v. People, 144 Ill. 378, 381 (1893), and Schintz

v. People, 178 Ill. 320, 326 (1899), as having established a

harmless error standard by which to measure the legal effect of a

trial judge's absence from the bench.

     In Meredeth, this court held that a judge's absence from a

murder trial during two successive days of closing argument was so

fundamentally irregular and improper as to warrant automatic

reversal of defendant's conviction, notwithstanding evidence

indicating that the judge's absence was by consent of defense

counsel. Meredeth declined to view the judge's absence during

closing argument as harmless because "[i]f [the judge] could be

absent during any part of the trial *** on the same principle his

absence during the entire trial might be justified." Meredeth, 84

Ill. at 482. Significantly, the Meredeth court did not base its

reasoning on facts which indicated that serious misconduct had

occurred during the trial judge's absence; on the contrary, the

Meredeth opinion expressly stated that "whether or not [defendant

was prejudiced], the absence of the judge from the court room ***

CAN NOT BE JUSTIFIED ON ANY PRINCIPLE OR FOR ANY CAUSE." (Emphasis

added.) Meredeth, 84 Ill. at 482. It is evident that Meredeth

cannot fairly be read as approving a harmless error standard of

review for a judge's absence during trial.   Subsequently, in

Thompson, this court again reversed a conviction because of the

judge's absence, and reiterated as conclusive the rule announced in

Meredeth, that "the presence of the judge during the argument of a

criminal case could not even be dispensed with by consent of the

parties." Thompson, 144 Ill. at 381. In Thompson, the trial judge

remained in his chambers during the entirety of the State's closing

argument to the jury and did not hear the argument during his

absence from the bench. After holding that the judge's inability to

hear the closing argument required reversal as a matter of law, the

Thompson court remarked in passing that "[h]ad the judge stepped

out of the court-room into his private room for a short time, where

he could still hear the argument and where he would have been in a

position to pass upon any question which might properly arise in

the argument, we are not prepared to say that an error would have

occurred." Thompson, 144 Ill. at 381-82.

     The quoted dictum from Thompson may be reasonably interpreted

as excusing a judge's brief absence from the bench if the judge is

constructively present, i.e., close enough to hear the proceedings

and rule on objections. Indeed, in the subsequent decision in

Schintz, this court adopted such an approach. In Schintz, the trial

judge remained in his chambers, a room adjacent to the courtroom,

during most of defense counsel's argument to the jury. The judge,

however, left the door to his chambers open and actually listened

to defense counsel's argument while he was physically absent from

the bench. Relying on the quote from Thompson, Schintz held that

the judge's absence from the bench in the case before it was

harmless error because "[t]he judge was within hearing and no

questions were raised to be passed upon by the judge." Schintz, 178

Ill. at 326. Thus, in Schintz, this court applied Thompson's

differentiation between the per se reversible error caused by a

complete abdication of judicial presence from the proceedings and

the lesser degree of harm resulting where a judge is physically

absent from the courtroom but is nonetheless nearby and  listening

to the proceedings from an anteroom. See also People v. Bolton, 324

Ill. 322, 330 (1927); Quigg v. People, 211 Ill. 17, 23 (1904). The

harmless error approach of Schintz may be understood as a practical

concession to the reality that a trial judge is not truly absent,

and may in fact be constructively present, when he or she is off

the bench but able to listen and participate in proceedings from a

nearby anteroom. Cf. Chrfrikas, 295 Ill. at 228 (even though judge

was within hearing of courtroom proceedings, he could not promptly

have stopped the prejudicial remarks of the prosecutor). We note

that Schintz, Bolton, and Quigg do not address how the jurors might

be affected by the judge's physical absence from the courtroom

notwithstanding the judge's nearby presence in another room.

     In the case at bar, the trial judge was completely absent for

a portion of the trial proceedings and therefore the "constructive

presence" approach of Schintz has no application. Nor do we find

persuasive other cases, decided after Schintz, in which a harmless

error standard of review was employed to excuse errors involving

judicial absence. For example, in People v. Berkowitz, 369 Ill.

197, 203 (1938), a majority of this court held that the trial

judge's error in leaving his courtroom did not require reversal

because such error was subsumed in the face of overwhelming

evidence of defendant's guilt. The analysis of the court in

Berkowitz, signalled a departure from the prior harmless error

cases involving judicial absence because Berkowitz minimized the

policy implications of judicial absence and instead relied almost

exclusively on what it characterized as overwhelming evidence of

defendant's guilt. We disagree with the Berkowitz approach to

errors involving judicial absence. If such errors could never be

held reversible as long as evidence of defendant's guilt is deemed

overwhelming, there would be little need for courts of review to

concern themselves with the fairness of prosecutions and the

integrity of the judicial process. We decline to follow the

aberrant precedent of Berkowitz.

     We reaffirm the view of Meredeth, Thompson, and Durden that a

presiding trial judge's total absence from the proceedings is per

se reversible error because the judge's presence is vital to the

preservation of the integrity of the justice system and the

defendant's right to a fair trial. These cases decline to search

for or require a defendant to demonstrate actual prejudice arising

from the trial judge's disappearance during trial, but instead

assume that such absence is inherently prejudicial. See, e.g.,

Meredeth, 84 Ill. at 482 (parties' consent to judge's absence was

unavailing; such absence could not be justified on any principle);

Thompson, 144 Ill. at 382 (unavailability of judge to rule on

objections during closing argument in felony trial was error of

sufficient magnitude to reverse for new trial; Durden, 192 Ill. at

497 (error arising from original judge's absence from end of trial

"requires a reversal of the cause, and therefore we pass no opinion

upon the facts"). In the case at bar, the presiding trial judge was

not only physically absent from the courtroom during a portion of

defense counsel's cross-examination of Vittori, but also did not

hear the proceedings and was not in any position to rule on

objections during his absence. Indeed, the record reveals that when

the judge returned to the courtroom, defendant's attorney advised

the judge that, during his absence, an objection had been raised to

a question. In response, the judge asked for the question to be

read back before making a ruling on the objection. This complete

abdication of judicial presence from even a portion of defendant's

jury trial renders the harmless error approach taken by Schintz

inapposite. Accordingly, we hold that in the instant case, as in

Meredeth, Thompson, and Durden, the presiding trial judge's

complete absence from the proceedings during a portion of

defendant's felony jury trial constitutes per se reversible error,

which presumes prejudice, and, as such, warrants granting the

defendant a new trial. Because prejudice is inherent when felony

trials continue in the absence of the presiding judge, we regard

any showing of demonstrable prejudice, or lack thereof, to

defendant either resulting from, or during, the judge's absence as

immaterial to the disposition of this issue.

     We conclude that, because of the significant public and

private interests involved in a criminal jury trial, a harmless

error rule standard of reviewing a judge's complete absence from

the bench is ill-advisable in felony cases. A defendant's liberty,

as well as the State's interest in convicting the guilty, are at

stake in every criminal trial. A presiding judge's supervision over

every stage of the proceedings precludes speculation that jurors

may perceive evidence received in the judge's absence as less

significant, and impresses upon jurors the importance of the

interests of the State and the defendant. A rule that a trial

judge's absence from the proceedings is harmless would open the

door to abuses which could hinder those interests and undermine

public confidence in judicial proceedings. In our view, only a rule

which requires reversal when a judge totally absents himself or

herself from the proceedings will effectively remove any incentive

which might otherwise exist for the judge to disregard the

significant interests involved in a criminal trial. Therefore, we

join hands with this court's prior decisions which have observed

that "the presence of the judge can not be dispensed with."

Thompson, 144 Ill. at 381.

     For the foregoing reasons, the judgments of the circuit and

appellate courts are reversed and this cause is remanded to the

circuit court for a new trial.

Appellate court judgment reversed;

                                         circuit court judgment reversed;

                                                          cause remanded.

                                                                         

     CHIEF JUSTICE BILANDIC, dissenting:

     I agree that it is error for a trial judge to leave the bench

during a felony trial without first calling a recess. I cannot

agree, however, with the majority's adoption of a rule which makes

such an error per se reversible. In my view, reversal in this

situation should be predicated on whether the defendant was

prejudiced by the trial judge's absence. I would find in this case

that the trial judge's absence from the bench caused no prejudice

to the defendant and does not require reversal of his conviction.

     The majority concludes that a rule of per se reversal is

required by this court's prior precedent. To the contrary, this

court's precedent clearly supports a rule that requires reversal

only where the defendant has been prejudiced as a result of the

judge's absence.

     In People v. Berkowitz, 369 Ill. 197 (1938), this court was

called upon to determine whether a trial judge's absence required

reversal of the defendant's conviction. In Berkowitz, during the

prosecution's closing argument, the trial judge left the bench and

went into his chambers to prepare jury instructions. While the

judge was absent, the prosecutor made comments that the defendant

claimed were prejudicial because they implicitly referred to the

defendant's failure to testify. Upon the judge's return to the

court room, defense counsel raised an objection to the improper

argument. The judge, after instructing the court reporter to read

back the objected-to remarks, sustained the objection and cautioned

the jury to disregard the remarks. Berkowitz, 369 Ill. at 203.

     On appeal, the defendant argued that the trial judge's absence

required reversal of his conviction. This court agreed that the

judge's temporary absence was error, but went on to evaluate the

record to determine if the defendant was prejudiced by the absence.

Finding no prejudice, this court held that reversal of the

defendant's conviction was not warranted. Berkowitz, 369 Ill. at

203-05; see also People v. Bolton, 324 Ill. 322 (1927) (reversal

not required where the trial judge was absent during part of jury

voir dire and part of closing arguments but was nearby and was

available to rule upon objections and other matters).

     The majority acknowledges the Berkowitz decision, but labels

it "aberrant precedent" and declines to follow it. When this

court's prior precedent is objectively reviewed, however, it is

apparent that Berkowitz may not be so easily disregarded. Berkowitz

did not represent a dramatic change in this court's precedent. This

court in earlier cases had conducted prejudice evaluations when

determining whether a trial judge's absence required reversal. See

Bolton, 324 Ill. 322; Schintz v. People, 178 Ill. 320, 325-26

(1899). Even the three cases relied upon by the majority, Meredeth

v. People, 84 Ill. 479 (1877), Thompson v. People, 144 Ill. 378

(1893), and Durden v. People, 192 Ill. 493 (1901), support the

proposition that reversal is not automatic where a trial judge is

temporarily absent from the bench and that the circumstances of the

absence should be considered in deciding whether to reverse. A

review of each of those cases reveals that reversal was required

because the defendant had been prejudiced by the judge's absence.

     In Meredeth, the trial judge was absent from the bench for

almost two days during arguments in the defendant's murder trial,

and the judge's place on the bench was occupied successively by two

members of the bar. More importantly, order was not maintained in

the courtroom. Specifically, the record showed that, during the

trial, no bullet had been found in the body of the victim and

defendant's counsel based his argument on that fact. After the

defense argument concluded, and while the trial judge was absent,

a bystander in the courtroom discovered what appeared to be a

bullet in a piece of the victim's skull. It was established that,

during the judge's absence:

               "evidence [was] allowed to be handled in the sight

          and nearly in the hearing of the jury, and that, when the

          shot was discovered in the skull, it was seized by the

          spectators, and passed from one excited group to another,

          and the party making the affidavit states he `believes

          that their words, eyes, conversations and excited

          gesticulations exercised a great influence on the

          jury.' " Meredeth, 84 Ill. at 481.

Reversal in Meredeth was thus warranted by the prejudice the

defendant suffered as a result of the trial judge's absence from

the proceedings.

     Similarly, in Thompson, the circumstances of the trial judge's

absence supported a finding that the defendant had been prejudiced

by the absence. In that case, the trial judge left the bench during

closing arguments, during which time repeated objections were made

by the defense. As a result of the judge's absence, no rulings were

ever obtained on these objections. This court determined that

reversal of the defendant's conviction was warranted by the judge's

absence. In reaching this holding, however, this court acknowledged

that the circumstances of the judge's absence will dictate whether

reversal is warranted. Specifically, the court noted that a

different result might have been reached had the judge, during his

absence, remained in a position to pass upon questions raised

during the arguments. Thompson, 144 Ill. at 381-82. Thus, Thompson,

like Berkowitz, supports the position that a judge's absence from

trial will not always require reversal.

     The third case relied upon by the majority, Durden, addressed

a situation entirely different from that presented here. In Durden,

the alleged error was not the absence of the trial judge, but the

substitution of a new judge in the trial judge's place midway

through the defendant's trial. In that case, the trial judge

vacated the bench (and, in fact, the county) during the defendant's

trial and took no further part in the proceedings until the hearing

on a motion for a new trial. Another judge sat in the trial judge's

place after the trial judge left the bench. On appeal, this court

reversed the defendant's conviction, finding that the defendant was

"entitled to the judgment of the judge, who has heard the evidence

in the case, and conducted the trial thereof." Durden, 192 Ill. at

498. This court justified the reversal by noting that the new judge

was required to determine what jury instructions would be given,

even though that judge had not heard the evidence to which the

instructions were to be applied. Additional prejudice was

demonstrated by the fact that, during the prosecutor's closing

argument, a dispute arose between the parties as to the testimony

of one of the witnesses, and the new judge was unable to determine

what the testimony had been. Durden, 192 Ill. at 499. Durden is

thus factually distinguishable from the instant case. Moreover,

even if Durden were relevant here, the court in Durden clearly

considered the prejudicial impact on the defendant in holding that

reversal was required.

     Accordingly, in each case the majority cites as support for

its holding that reversal is required regardless of prejudice,

there was prejudice to the defendant, and it was that prejudice

which justified reversal of the defendant's conviction. Admittedly,

some dicta in Meredeth could be read to suggest that the lack of

prejudice would not preclude reversal. See Meredeth, 84 Ill. at

482. Berkowitz, however, post-dated Meredeth by 61 years. In

Berkowitz, this court clarified that a trial judge's absence would

not warrant reversal unless there was prejudice to the defendant.

     In sum, the majority's attempt to justify a rule of per se

reversal on the basis of this court's past precedent is unavailing.

Our precedent shows that reversal is appropriate only where the

defendant has been prejudiced. Moreover, I believe that predicating

reversal on a finding of prejudice is the better reasoned approach.

Where a trial judge is temporarily absent from the bench but the

circumstances demonstrate that no prejudice accrued to the

defendant, no justification exists for reversing the defendant's

conviction and granting a new trial. The defendant has received a

fair trial, and a new trial would unjustly reward the defendant and

constitute an unnecessary waste of judicial resources. A scenario

may easily be envisioned where a trial judge leaves the bench for

only the slightest period of time, during which time only the most

inconsequential of proceedings take place. One such situation could

arise, for instance, where, during the judge's absence, a witness

is sworn and asked to state his or her name for the record. To

suggest that a new trial is automatic in this scenario without any

inquiry into whether the defendant was prejudiced by the judge's

absence is absurd. Yet, the majority's rule, which deems prejudice

to the defendant irrelevant, would seem to require such a holding.

     I would therefore hold that a trial judge's temporary absence

from a felony trial may be considered harmless error where the

defendant has not been prejudiced by the absence. Applying this

standard, I would find the error in this case to be harmless. The

circumstances of the trial judge's absence here reveal that no

prejudice to the defendant resulted. The trial judge's absence

occurred during the defendant's cross-examination of the assistant

State's Attorney who took the defendant's written confession. A

total of 11 questions were asked of the witness during the judge's

absence. The text of this questioning is set out in the majority

opinion. All of the questions sought to determine the witness' job

duties in the felony review unit of the State's Attorney's office

and whether those duties included the gathering of evidence for

criminal prosecutions. No objections were made by the State to any

of the questions until the tenth question. The judge apparently

returned to the courtroom moments later, after only one additional

question had been asked. Upon his return, the judge immediately

ruled on the objection, overruling it.

     These facts show that the judge was not absent from the

proceedings for a significant period of time. To the contrary, the

judge was absent long enough only for 11 brief questions to be

asked, which could not have been more than a few minutes. Also, the

questions asked during the absence were merely background

questions, and did not go to the heart of the witness' testimony,

i.e., the defendant's confession and the circumstances surrounding

it. Further, the trial judge remained nearby and was available to

rule upon objections. In fact, the judge told the parties, "If you

need me, let me know." Only one objection was made during the

judge's absence and that objection was ruled upon one question

later, pursuant to a procedure suggested by defense counsel.

     It is also significant that defense counsel made no complaint

about the judge's absence in the trial court nor otherwise made any

record that anything prejudicial to the defendant had occurred

during the judge's absence. Obviously, defense counsel did not

consider the judge's absence to be a significant event. This

circumstance should certainly be considered probative of whether

anything occurred during the judge's absence that adversely

affected the defendant's interests. Presumably, had the courtroom

erupted into chaos during the judge's absence, defense counsel

would have noted it for the record. Moreover, as the majority

concedes, the evidence in this case was not closely balanced. Slip

op. at 6.

     In conclusion, the circumstances present in this case

demonstrate that the defendant was not prejudiced by the trial

judge's brief absence. I would therefore affirm the defendant's

conviction.

     For the foregoing reasons, I respectfully dissent.

     JUSTICE NICKELS joins in this dissent.